**AVIS RENT A CAR SYSTEM, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 70–C–70.**

United States District Court,
E. D. New York.

Sept. 27, 1973.

findings of fact, conclusions of law and opinion.

## DISCUSSION

Plaintiff corporation, organized under the laws of the State of Delaware with its principal place of business at Garden City, New York, which is within the Eastern District of New York, has filed suit against defendant, UNITED STATES OF AMERICA, in order to recover a sum it has paid as a portion of an assessment allegedly due and owing the Government.

Plaintiff alleges that it has timely filed with the District Director of Internal Revenue at Brooklyn, New York, its Federal Insurance Contributions Act ("FICA"), Federal Unemployment Tax Act ("FUTA"), and Federal Withholding (Collection of Income Tax at Source on Wages) ("Withholding") returns for the years 1962, 1963, 1964, 1965, and 1966, and that it has paid the amounts shown thereon to be due. After an audit, however, on January 17, 1968 and February 23, 1968, the Commissioner of Internal Revenue assessed deficiencies against plaintiff for the years 1962, 1963, 1964, 1965, and 1966, in the total amounts of $105,733.20 for FICA, $6,124.51 for FUTA and $199,926.46 for Withholding. The basis of these assessments is a claim by the Commissioner that certain individuals engaged from time to time by plaintiff as "car shuttlers" were employees within the meaning of the Internal Revenue laws, so that the FICA, FUTA, and Withholding provisions were applicable to the amounts paid to them by plaintiff. That claim is the issue in this case.

. On March 26, 1968 plaintiff paid a sum of $31,178.42 with respect to the assessments, and that amount constitutes a divisible portion of the additional taxes assessed. On April 30, 1968 plaintiff filed a timely claim for a refund of the additional taxes assessed, and for an abatement of the balance of the assessment.

On April 7, 1969, however, plaintiff received notice that the I.R.S. disallowed

Gilbert, Segall & Young, New York City, for plaintiff; Robert Layton, New York City, Frederick E. Sherman, Stuart B. Stillman, Garden City, N. Y., of counsel.

Robert A. Morse, U. S. Atty., E.D.N.Y., Scott P. Crampton, Asst. Atty. Gen., Edward J. Snyder, Robert J. Hipple, Attys., Dept. of Justice, Tax Div., Washington, D. C., for defendant; Robert J. Hipple, Washington, D. C., of counsel.

TRAVIA, District Judge.

This action having come on to be heard before this court on the 27th day of July, 1973, and the parties having on that day stipulated to waive a jury trial, and the evidence of the parties having been adduced, and the attorneys for the parties having submitted their respective pretrial and posttrial briefs and memoranda, and upon all the papers and exhibits on file in this action, and after due deliberation this court sets forth its

in full plaintiff's claim for a refund and an abatement of the additional assessment. These taxes, plaintiff now avers, were erroneously and illegally assessed in that the "car shuttlers," engaged by plaintiff, were not "employees" within the meaning of the applicable Internal Revenue Code provisions. As a result, plaintiff seeks the sum of $31,178.42, which is that amount paid by plaintiff to the Government as a portion of the additional taxes assessed, together with appropriate interest from March 26, 1968.

The Government in its amended answer and counterclaim filed February 16, 1973, denies that the sum paid by the plaintiff is an outgrowth of an illegal assessment, and alleges that the sum of $323,938.50, which represents the unpaid remainder of the assessment plus interest, is now due and owing the Government.[1]

Only one witness, Mr. Edwin Hale, who is presently a City Manager with Avis Rent A Car System, Inc. ("Avis"), was called to the stand during the course of the trial. The remainder of the evidence before the court, in addition to Mr. Hale's testimony, consists of exhibits and depositions offered, "for any purpose," pursuant to Rule 32(a)(3)(B), Fed.R.Civ.P.

The issue in this case, a narrow one, turns on whether certain individuals styled "car shuttlers" were in fact employees of AVIS or independent contractors, during the years in question, for purposes of FICA, FUTA, and Withholding.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

▪ The Federal Insurance Contribution Act, Title 26 U.S.C. § 3101 et seq., imposes both an income tax on individuals with respect to their employment[2] and an excise tax on employers "with re-

spect to having individuals in [their] employ."[3] Under FICA, an "employee" is defined as, among other things, "any individual, who under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee. . . . "[4]

As an amplification of this definition, 26 C.F.R. § 31.3121(d)–1 provides in pertinent part:

"(c) *Common law employees.* (1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

(2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an

---

1. Jurisdiction lies in this court pursuant to Title 28 U.S.C. § 1346(a)(1).

2. Title 26 U.S.C. § 3101.

3. Title 26 U.S.C. § 3111.

4. Title 26 U.S.C. § 3121(d)(2).

independent contractor is not as to such services an employee under the usual common law rules. . . .

(3) *Whether the relationship of employer and employee exists under the usual common law rules will in doubtful cases be determined upon an examination of the particular facts of each case."* (Emphasis added).

■ The Federal Unemployment Tax Act, Title 26 U.S.C. § 3301 et seq., imposes an excise tax on employers with respect to individuals in their employ.[5] Under this chapter, an "employee" was defined, for the years in question,[6] as including:

". . . an officer of a corporation, but such term does not include—

(1) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an independent contractor, or

(2) any individual (except an officer of a corporation) who is not an employee under such common law rules."

The Collection of Income Tax at Source on Wages ("Withholding") provisions, Title 26 U.S.C. § 3401 et seq., mandate that every employer who makes payment of wages "shall deduct and withhold upon such wages . . . a tax."[7] The coextensive definitions of "employee" and "employer" may be found in this rather inconclusive section:[8]

"Employer.—For purposes of this chapter, the term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person . . . ."

■ The pertinent section[9] in the Code of Federal Regulations which elaborates upon the meaning attributed to the term "employee," for purposes of Withholding, however, is a substantial replica of the regulation pertaining to FICA and FUTA "employees."[10] As a result, the test which this court shall utilize in determining whether "car shuttlers" are "employees," or "independent contractors," is the "common law applicable in tort actions under the doctrine of *respondeat superior.*" See Lifetime Siding, Inc. v. United States, 359 F.2d 657, 660 (2d Cir.) cert. denied 385 U.S. 921, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966); Titanium Ores Corp. v. United States, 205 F.Supp. 606, 609 (D.Md. 1962).

■■ An analysis of the particular fact-pattern in a case is always a substantial part of the foundation upon which the court rests its decision, but an examination of the facts by the court is of particular importance in a "doubtful case"[11] such as this one. Whether an employer-employee relationship exists or not "is to be ascertained by an over-all view of the entire situation, not by any rule of thumb, or by the presence or absence of a single factor. The result in each case must be governed by the special facts and circumstances of the case itself." Cape Shore Fish Co. v. United States, 330 F.2d 961, 965, 165 Ct.Cl. 630 (1964).

What is, therefore, an AVIS "car shuttler"? While many people have

---

5. Title 26 U.S.C. § 3301.

6. The pertinent provision, Title 26 U.S.C. § 3306(i), was amended by Pub.L. 91–373, Title I, § 102(a), August 10, 1970. The present definition coincides with that definition of "employee" under FICA as found in Title 26 U.S.C. § 3121(d). *See also* the applicable regulation for FUTA, Title 26 C.F. R. § 31.3306(i)–1.

7. Title 26 U.S.C. § 3402.

8. Title 26 U.S.C. § 3401(d).

9. Title 26 C.F.R. § 31.3401(c)–1(b).

10. *See* Title 26 C.F.R. § 31.3121(d)–1, and Title 26 C.F.R. § 31.3306(i)–1(b).

11. *See* Title 26 C.F.R. § 31.3121(d)–1(c)(3), which states:
    "Whether the relationship of employer and employee exists under the usual common law rules will in *doubtful cases* be determined upon an examination of the particular facts of each case." (emphasis added).

come to recognize the "We Try Harder" company, few have begun to realize the magnitude of the day-to-day operations of the corporation. "Car shuttlers" are individuals who have been engaged to ameliorate a "problem" that may arise in "emergency situations."

As everyone knows, AVIS is in the business of renting cars without drivers. The availability of cars at locations where needed is a key facet of plaintiff's operation, and it entails a constant re-distribution of cars to meet reservations and maintain a ready reserve of available cars. This function may be delegated to full-time employees of the local AVIS agencies, but peak rental demands upon the company may cause an imbalance of cars in a certain locale. Such imbalances may result from such diverse factors as holiday traffic, conventioneer requests, or weather considerations (Transcript of Trial ("TR") 45). In order to re-distribute the many vehicles it handles, plaintiff engages individuals who are appropriately designated "car shuttlers."

A "car shuttler" is paid a fixed fee to move a car from point A to point B (TR 44, 58), and he is required to sign a Vehicle Transfer Contract [12] (Plf's Exh. # 3; Def's Exh. "A") before he may move the car. Upon the completion of his task, the "shuttler" is paid his fee by either cash or check (Depositions ("Deps.") of Pape, p. 11; Hillestad, p. 14–15; Elliot, p. 13).

In a suit to recover FICA, FUTA and Withholding taxes, the burden is on the taxpayer to establish that the relationship of employer-employee did not exist during those years in question.[13] It is therefore incumbent upon plaintiff to prove that the factors attendant to the function of the "car shuttlers" confirm that the "shuttlers" were indeed independent contractors, and not employees of AVIS.

Perhaps the most important, and also the most troublesome, concept which will often clarify a close question regarding the employee-independent contractor dichotomy is whether the principal has the right to direct the manner and method in which the work shall be done, as well as the result to be accomplished.[14] Actual supervision over the services performed is not necessary; it is sufficient if the employer has the *right* to do so.[15] Generally, the satisfaction of these tests indicates an employer-employee relationship.

In the case at bar, plaintiff alleges that during the period in question it did not have the right to exercise control over the manner in which, or the means by which, "shuttlers" did their work. While there is evidence, among other things, that "shuttlers" received no training (Dep. of Copelin, p. 18), were not required to follow a specific route (Dep. of Beck, p. 10), and were not obligated to arrive at a specific time at their destination (Dep. of Lankford, p. 12), these factors are not conclusive of the issue. The Government contends, and with some validity, that there can be very little control when a person is required to move a car from point A to point B. Further clouding the issue is the fact that it would have been well-nigh impossible for AVIS to put a su-

12. The Vehicle Transfer Contract reads as follows:

"Contractor acknowledges that he received the vehicle below from Owner or Owner's Authorized Representative in good appearance and safe mechanical condition, and agrees to deliver it at the time and place and for the fee designated below, in the same condition as received, ordinary wear and tear excepted. Contractor agrees not to use said vehicle for any purpose other than for delivery as described herein, nor to transport any persons or property therein.

It is agreed that this contract in no way constitutes the contractor as an agent or employee of the owner of said vehicle or of Avis Rent-A-Car System, its members or licensor or licensor's subsidiaries."

13. Kurio v. United States, 281 F.Supp. 252, 261 (S.D.Texas 1968).

14. *See* Illinois Tri-Seal Products, Inc. v. United States, 353 F.2d 216, 223, 173 Ct.Cl. 499 (1965); see also Title 26 C.F.R. § 31.-3121(d)–1(c)(2).

15. *See, e. g.*, Title 26 C.F.R. § 31.3121(d)–1(c)(2).

pervisor in a car with the "shuttler," for it was precisely this manpower shortage which led AVIS to engage "shuttlers."

The key issue, however, is whether the person, or corporation, for whom services are performed has the *right* to control the actions of the individual. A perusal of the Vehicle Transfer Contract reveals that the "shuttler" was obligated to deliver the vehicle at the time and the place designated in the contract; that the "shuttler" had to agree not to use the vehicle for any purpose other than delivery, and not to transport any persons or property therein.[16] These factors appear to represent a limited right of AVIS to control the performance of the "shuttlers" and, standing alone, plaintiff's contention falls short of convincing this court that "shuttlers" are independent contractors.

Plaintiff's other arguments are more substantial. "Car shuttlers" performed their tasks on a job-to-job basis, and they could reject assignments they deemed unsuitable without fear of recrimination (Deps. of Talarico, p. 21; Reese, p. 18). The "permanency of (a) relationship can hardly be said to exist or be a weighty element where each obligation was of comparatively short duration and the worker was free to accept or reject the offer of a new or similar obligation." [17]

Additionally, "shuttlers" were not entitled to, and did not receive vacation pay, overtime pay, sick-leave pay, bonuses or any other fringe benefits (Deps. of Zatezalo, p. 13; O'Brien, p. 13), which may be reasonable indications of an independent contractor status.[18] On the other hand, one may argue that this facet of plaintiff's operation reveals nothing more than the predilections of an overbearing employer. This argument is unpersuasive, however, for "regular employees" of AVIS received, and do receive, such benefits (TR. 49).

In many instances, AVIS dealt with "head shuttlers" who made it their business to select individual "shuttlers." On many of these occasions, AVIS had no contact with the individual "shuttlers" (Deps. of Shrag, pp. 3–4; Askey, p. 4; Gosling, p. 6; TR 56–57). This is of importance, for any right of control AVIS had with regard to the individual "shuttlers" would of necessity be reduced by some degree. *See* Bonney Motor Express, Inc. v. United States, 206 F.Supp. 22, 24 (E.D.Va.1962).

Plaintiff makes much of the fact that "shuttlers" were not identified, by their manner of dress, as AVIS personnel (Deps. of Zepp, p. 20; Reese, p. 15). Mr. Hale testified that "shuttlers" had no dress requirements imposed upon them at all, while the regular employees were subject to various restrictions regarding their manner of dress (rental and service agents wore uniforms, and company policy mandated the wearing of the ubiquitous "We Try Harder" buttons (TR. 48, 51). Sound business techniques dictate that those who deal with the public, such as front office managers and high visibility personnel, should be neat in their appearance. It is also to be noted that this is an additional means of advertising. "Shuttlers," on the other hand, are required only to drive a car between two points, and they do not provide any services *directly* to the public. Under such circumstances, no great amount of importance should be attached to the dress and manner of appearance of the "shuttlers." [19]

Perhaps a more telling indication of the status of "car shuttlers" is the lack of a seniority system among these individuals since work assignments were handed out on a "first-come, first-serve basis." (Deps. of Gartner, p. 18; Spradley, c., p. 20; Reese, p. 14). A seniority system is often an effective means by which an employer insures

---

16. Vehicle Transfer Contract, *supra* note 12.

17. Silver v. United States, 131 F.Supp. 209, 212 (N.D.N.Y.1954).

18. *See, e. g.,* Lifetime Siding, Inc. v. United States, 359 F.2d 657, 659 (2d Cir.), cert. de-

nied, 385 U.S. 921, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966).

19. *Cf.* William C. McCombs Co. v. United States, 436 F.2d 979, 982, 193 Ct.Cl. 644 (1971).

that the better-trained individual stays in his employ, and is a functional means for delegating authority among employees.

Moreover, AVIS did not follow an established pattern of interviewing or screening prospective "shuttlers" (Deps. of Moore, p. 6; Elliot, p. 12). This lack of a procedure to sift out potentially "poor" "car shuttlers" may be compared with the screening process AVIS utilizes when it hires new "regular employees." An Application for Employment [20] must be filled out in detail by the prospective employee, and a written Employment Test [21] must be passed by all such applicants. "Shuttlers," however, ordinarily had to present nothing more than a driver's license in order to move a car (Deps. of Elliot, p. 11; Robertson, p. 10; Moore, p. 6). While it may be suggested that the only skill required of a "car shuttler" is an ability to drive a car, AVIS could have inquired into a "shuttler's" background in order to verify his trustworthiness.[22] This is significant, for it would appear that an employer would naturally be more interested in an employee's, rather than an independent contractor's, prior employment and conduct since the employee is a representative member of that firm, both during and after working hours.

Plaintiff seeks to connect the fact that "shuttlers" had to pay fines for speeding and parking violations (Deps. of Talarico, p. 12; Copelin, p. 13) with their alleged status as independent contractors. Such an inference cannot be drawn when "regular employees" of AVIS had to pay the same fines (TR. 71).

This court does note, however, that no workman's compensation insurance of any kind was carried on the "shuttlers" (Deps. of Talarico, p. 6; Chambliss, p. 10), and this is evidence, in the very least, that these men were not *looked upon as employees* by Avis. *Cf.* Air Terminal Cab, Inc. v. United States, 341 F.Supp. 1257, 1263 (E.D.Mo.1972). Moreover, it seems clear that all of plaintiff's actions were pointed so as to indicate *its own* viewpoint that the "shuttlers" were independent contractors. In a similar vein, there is evidence that the "shuttlers" thought of themselves as independent contractors (Deps. of Shrag, p. 11; Copelin, p. 16), and the Vehicle Transfer Contract specifically reads:

"It is agreed that this contract in no way constitutes the contractor as an agent or employee of the owner of said vehicle or of Avis Rent-A-Car System, its members or licensor or licensor's subsidiaries."

Notwithstanding the sound principles that "contracts, however 'skillfully devised,' should not be permitted to shift tax liability,"[23] and that "[p]utting an independent contractor's label on [workers] does not [automatically] take [them] out of the ambit of the federal taxing statutes,"[24] it is also true that the beliefs and intentions of the parties, while not determinative of the issue, are nonetheless relevant.[25]

It is obvious that the nature of a "shuttler's" job precludes him from being fired during the course of his work, and the only recourse available to a "dissatisfied" AVIS is to refrain from offering that "shuttler" additional contractual assignments. This situation appears to differ from the one in Rayhill v. United States, 364 F.2d 347, 354, 176

---

20. Plf's Exh. # 6.

21. Plf's Exh. # 7.

22. *See, for example*, Plf's Exh. # 6, entitled "Application For Employment," which reads in part:
"Have you ever been found guilty of a crime other than a minor traffic violation?
Has fidelity insurance coverage ever been denied with respect to you?"

23. United States v. Silk, 331 U.S. 704, 715, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947).

24. Etherton v. United States, 278 F.Supp. 568, 571 (E.D.Tenn.1967), aff'd, 394 F.2d 6 (6th Cir. 1968). *See also* Title 26 C.F.R. § 31.3121(d)–1(a)(3).

25. American Consulting Corp. v. United States, 454 F.2d 473, 480 (3d Cir. 1971).

Ct.Cl. 1120 (1966), where, despite the nature of an "applicator's" work, which *seems* to have allowed for his being fired while on the job, "[i]n no instance was the work of an applicator terminated during its progress." [26] This court recognizes that the right to discharge need not be exercised, and its mere presence is sufficient to be an indicator of control,[27] but under the circumstances of this case, no meaningful inference should be drawn with regard to the questionable ability, or inability, of AVIS to fire or discharge "shuttlers." [28] Suffice it to say that AVIS did not discharge "shuttlers" while they were on the job.

What is of great significance, though, is the fact that these "car shuttlers" had the right to work for other rental agencies, including the competitors of AVIS, and indeed did so (Deps. of Gartner, p. 7; Gosling, p. 4; Christensen, p. 10). *See* Illinois Tri-Seal Products, Inc. v. United States, 353 F.2d 216, 229, 173 Ct.Cl. 499 (1965). Such actions on the part of the "shuttlers" indicate an independence from plaintiff that greatly transcends any degree of freedom ordinarily exhibited by an employee.

It seems clear that the factors here in their totality establish that these individuals styled "car shuttlers," were, during the years in question, independent contractors and not employees within the meaning of FICA, FUTA, and Withholding. While the question is a close one, this court is of the opinion that such factors as the lack of a seniority system, the irregular work patterns of the "shuttlers," the lack of benefits for "shuttlers," and the "shuttlers'" ability to work for competitors, when measured alongside the unclear factors here of the right of control and discharge tip the scales in favor of plaintiff.

This court is not unmindful of Revenue Ruling 66–381,[29] which holds that "the shuttlers performing services for the agency . . . are employees of the agency for Federal employment tax purposes." [30] The Revenue Ruling, it should be noted, was issued as a direct response to the specific inquiry involved in this case, i. e., were "car shuttlers" employees or independent contractors?

While Revenue Rulings are certainly persuasive,[31] such rulings do not commit this court to any particular interpretation of the law.[32] It is significant to note that one important difference between that Ruling and this opinion is the stress to be placed upon the right to discharge *in this* case. The Ruling, citing Ringling Bros.-Barnum and Bailey Com. Shows v. Higgins, 189 F.2d 865 (2d Cir. 1951), equates a failure to renew a "shuttler's" contract with the right to discharge. Yet the *Ringling Bros.* case is clearly distinguishable, for the contracts in that case differed greatly from the Vehicle Transfer Contracts. The following description of the contracts in the *Ringling* case suggests the reason why the court ruled that the performers were employees:

"The contracts were for an entire season, seven months, while the circus traveled throughout the United

---

26. *See* Rayhill v. United States, 364 F.2d 347, 354, 176 Ct.Cl. 1120 (1966), wherein the court said:
"If plaintiff was dissatisfied with the work, he would not offer the applicator another work order. The applicator, if dissatisfied, would decline the next job offered by the plaintiff. This [of course], is not the equivalent of evidence of a right to fire an applicator from a job once he had begun to work on it. It is only evidence of the right not to enter into another contract.'"

27. *See* E. F. Williams Co. v. United States, 139 F.Supp. 875, 877–878 (N.D.N.Y.1956).

28. It is the very nature of the shuttlers' mission that also beclouds any examination of the plaintiff's "right" of control over the shuttlers' means of performance, as mentioned above.

29. Plf's Exh. # 5.

30. *Id.* at 12.

31. McMartin Industries v. Vinal, 301 F.Supp. 749, 754 (D.Neb.1969), aff'd, 441 F.2d 1274 (8th Cir. 1971).

32. Miller v. Commissioner of Internal Revenue, 327 F.2d 846, 850 (2d Cir.), cert. denied, 379 U.S. 816, 85 S.Ct. 32, 13 L.Ed.2d 28 (1964).

States. In each contract the performer *granted an option to the circus to renew the contract for the next succeeding season upon the same terms. The plaintiff could, in effect, discharge by failing to renew; if it did renew, the performer could not appear at any other circus . . . during the off season without plaintiff's written consent.*" (emphasis added). *Id.* at 869.

The right of discharge, as an important element of the right of control, was much more evident, in that case than this one, for there was not only an option to renew in those contracts, but there was also an obligation upon the part of the performers not to perform elsewhere without permission, in the event that the option *was* renewed.

In view of the conclusion reached here that the "shuttlers" were independent contractors, and not employees, the deficiency assessments made by the Commissioner were beyond this statutory power. Plaintiff is, therefore, entitled to recover and defendant's counterclaim must be dismissed.

Submit judgment in accordance with this opinion.