**AVIS RENT A CAR SYSTEM, INC.,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

**No. 1012, Docket 74-1119.**

United States Court of Appeals,
Second Circuit.

Argued May 17, 1974.

Decided Sept. 24, 1974.

On Rehearing Nov. 6, 1974.

Robert Layton, New York City (Layton & Sherman, New York City, on the brief, Frederick E. Sherman, New York City, and Stuart B. Stillman, Garden City, N. Y., of counsel), for plaintiff-appellee.

Gary R. Allen, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., Meyer Rothwacks, George G. Wolf, Tax Div., Dept. of Justice, on the brief, Robert A. Morse, U. S. Atty., for the E. D. N. Y., of counsel), for defendant-appellant.

Before MEDINA, HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a district court judgment for the taxpayer in a tax refund action. The issue is whether certain drivers, so-called car shuttlers, engaged by the taxpayer, Avis Rent A Car System, Inc. ["Avis"], were Avis employees for the purpose of determining Avis's liability for federal employment taxes. The District Court for the Eastern District of New York held that the car shuttlers were independent contractors rather than employees, and accordingly gave judgment for the taxpayer. The Commissioner appeals.

The facts in this case are substantially undisputed. Avis is in the business of renting cars to the general public from a series of rental stations located at numerous points dispersed widely throughout the country. Its customers frequently rent Avis cars for one-way trips in which the customer returns the car to a station other than the rental station. Because of these one-way rentals, and because of seasonal and holiday fluctuations in the volume of business at various locations, shortages or oversupplies of cars develop at particular sites. There is thus an irregular need to relocate automobiles. Avis employs "car shuttlers", drivers who transport automobiles from one station to another, to adjust local station inventories to demand.

At the times relevant to this appeal, car shuttlers were for the most part not regularly or permanently employed by Avis. They were commonly servicemen, airport personnel, civil servants or housewives, although from time to time the taxpayer's regular employees shuttled automobiles, either in the course of their employment or after hours. Unlike Avis's permanent employees, the occasional car shuttlers did not fill out employment applications, take employment examinations, or submit to employment interviews. They did not participate in Avis's regular employment benefit programs, and unlike some Avis employees, they did not wear distinctive uniforms. The Avis car shuttlers fre-

quently offered their driving services to other car rental companies.

Car shuttlers were recruited by a variety of means. At some stations, key individuals, "head shuttlers", contracted to shuttle automobiles. They, in turn, subcontracted the actual driving to others. In San Francisco, shuttlers were hired through a union hiring hall. Some stations maintained listings of persons known to be interested in shuttling, and Avis would call on people so listed when the need for shuttlers arose. Avis's full time employees knew of the availability of shuttling work through their regular employment and sometimes acted as shuttlers. At airport locations, airline personnel, who could get flight passes for return transportation, frequently shuttled. Shuttlers were recruited from off the street and from state employment agencies. People often simply walked up to the taxpayer's rental counter and inquired into the possibility of shuttling.

Once Avis chose someone to shuttle a car, it checked his driver's license and filled out an Avis "Vehicle Transfer Contract", a standard form used at all stations. The contract had spaces for identifying the car to be moved, the sending and receiving rental stations, the date, the time, mileage, the agreed upon compensation, and the signature of the shuttler and Avis agent. The form contained the following language:

> "Contractor acknowledges that he received the vehicle below from Owner or Owner's Authorized Representative in good appearance and safe mechanical condition, and agrees to deliver it at the time and place and for the fee designated below, in the same condition as received, ordinary wear and tear excepted. Contractor agrees not to use said vehicle for any purpose other than for delivery as described herein, nor to transport any persons or property therein.
> "It is agreed that this contract in no way constitutes the contractor as an agent or employee of the owner of said vehicle or of Avis-Rent-A-Car System, its members or licensor or licensor's subsidiaries."

The compensation was set by Avis on a take-it-or-leave-it basis, generally at a flat rate per trip for local moves, and at a flat rate based on estimated mileage for distant moves.

Upon completing the forms, the shuttler drove the car to its destination, or if the car was to be returned from a distant point, he traveled to the car and returned it. Avis did not specify a route or a delivery time, although it was usually understood that shuttlers were to proceed as expeditiously as possible. Avis did not train or instruct shuttlers except for an occasional specific instruction as to the procedure in the event of accident or breakdown. Upon arriving at the receiving station, the shuttler would report to the Avis rental desk with his copy of the Vehicle Transfer Contract. He was paid the agreed upon fee and was reimbursed for expenses. Payment was usually made in cash. Avis generally paid for or provided transportation on the half of the round-trip not involving shuttling.

The resolution of the issues in this appeal depends on the interpretation of provisions assessing taxes under the Federal Insurance Contribution Act ("FICA" or "Social Security"), the Federal Unemployment Tax Act ("FUTA"), and the provisions for collection of income tax at source of the Internal Revenue Code of 1954 ("withholding tax"). The FICA provisions of the Internal Revenue Code of 1954, see sections 3101 et seq., assess on individuals a tax on income which is required to be collected by the individual employers:

> "§ 3101. Rate of tax
>
> "(a) *Old-age, survivors, and disability insurance.*—In addition to other taxes, there is hereby imposed on the income of every individual a tax equal to the following percentages of the wages (as defined in section 3121(a)) as received by him with respect to em-

ployment (as defined in section 3121(b))—

\*   \*   \*   \*   \*   \*

"§ 3102. Deduction of tax from wages

"(a) *Requirement.*—The tax imposed by section 3101 shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid."

The terms used in the sections assessing the tax are defined as follows:

"§ 3121. Definitions

"(a) *Wages.*—For purposes of this chapter, the term 'wages' means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash;

\*   \*   \*   \*   \*   \*

"(b) *Employment.*—For purposes of this chapter, the term 'employment' means . . . any service, of whatever nature, performed after 1954 . . . by an employee for the person employing him. . . ."

The FICA also assesses an excise tax on the employer:

"§ 3111. Rate of tax

"(a) *Old-age, survivors, and disability insurance.*—In addition to other taxes, there is hereby imposed on every employer an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages (as defined in section 3121(a)) paid by him with respect to employment (as defined in section 3121(b)) . . . ."

The FICA issue on this appeal is whether the car shuttlers were in the "employment" of Avis, as that term is used in sections 3101 and 3111, and as it is defined in section 3121(b). Since "employment" is defined as "service . . . by an employee," this issue depends on the meaning of "employee", which is defined by section 3121(d)(2):

"(d) *Employee.*—For purposes of this chapter, the term 'employee' means—

\*   \*   \*   \*   \*   \*

(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee. . . ."[1]

1. Treasury Regulations promulgated under Section 3121 interpret "employee" as follows:

"(c) *Common law employees.* (1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

"(2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business or profession, in which they offer their services to the public, are independent contractors and not employees.

"(3) Whether the relationship of employer and employee exists under the usual common law rules will in doubtful cases be determined upon an examination of the particular facts of each case." 26 C.F.R. § 31.3121(d)—1.

The FUTA, sections 3301 et seq., of the Internal Revenue Code of 1954, as amended, assess a tax in the following terms:

"§ 3301. Rate of tax.

"There is hereby imposed on every employer (as defined in section 3306(a)) for the calendar year 1961, and for each calendar year thereafter an excise tax, with respect to having individuals in his employ, equal to 3.1 percent of the total wages (as defined in section 3306(b)) paid by him during the calendar year with respect to employment (as defined in section 3306(c)) after December 31, 1938."

For the purposes of the FUTA, "employment" is defined as the service of an "employee". Id. at § 3306(c). "Employee" includes all persons except:

"(1) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an independent contractor, or

"(2) any individual (except an officer of a corporation) who is not an employee under such common law rules." Id. at Sec. 3306(i)(1) and (2).

The Treasury Regulation clarifying this definition, 26 C.F.R. § 31.3306(i)—1, is substantially the same as the regulation relating to "employee" under the FICA. See note 1, supra.

Sections 3401 et seq., of the Internal Revenue Code require employers to withhold an income tax from all wages paid:

"§ 3402. Income Tax collected at source.

"(a) Requirement of withholding.— Every employer making payment of wages shall deduct and withhold upon such wages (except as otherwise provided in this section) a tax determined in accordance with the following tables."

"Wages", as it is used in section 3402 is defined by section 3401(a) as remuneration paid an "employee", and "employee", as it is used in section 3401(a) is defined tautologically by section 3401(c). Treasury Regulation 31.-3401(c)—1 defines "employee" in terms substantially the same as Treasury Regulation 31.3121(d)—1 relating to FICA. See note 1, supra.

It thus appears that these three taxes, known collectively as federal employment taxes, must be collected and paid as to payments made to an "employee" of the person making the payments "under the usual common law rules applicable in determining the employer-employee relationship." § 3121(d)(2), Internal Revenue Code of 1954.

Avis did not withhold or pay with respect to the compensation paid car shuttlers any employment taxes for the years 1962 through and including 1966. In 1968 the Commissioner determined that car shuttlers were Avis "employees", and accordingly assessed tax deficiencies against Avis as to those years totalling $105,733.20 for FICA, $6,124.51 for FUTA, and $199,226.46 for withholding tax. Avis paid $31,178.42 of the assessments and filed a timely claim for refund. In April, 1969, the Commissioner disallowed the claim. On June 20, 1970, Avis commenced this action in the Eastern District of New York to recover the amount paid. The case was tried before Judge Travia, sitting without a jury. The evidence consisted of the testimony of one witness, Mr. Edwin Hale, a City Manager for Avis, some 37 depositions, and a number of exhibits. After reviewing the evidence and the parties' memoranda, the district court held that the car shuttlers were not Avis employees, and that they were independent contractors. 364 F.Supp. 605 (E.D.N.Y. 1973). The district court recognized that one key issue under the applicable regulations and Supreme Court decisions was whether Avis had the right to control the actions of car shuttlers:

"The key issue . . . is whether the person, or corporation, for whom services are performed has the *right* to control the actions of the individual. A perusal of the Vehicle Transfer Contract reveals that the 'shuttler' was obligated to deliver the vehicle at

the time and the place designated in the contract; that the 'shuttler' had to agree not to use the vehicle for any purpose other than delivery, and not to transport any persons or property therein. These factors appear to represent a limited right of AVIS to control the performance of the 'shuttlers' and, standing alone, plaintiff's contention falls short of convincing this court that 'shuttlers' are independent contractors." 364 F.Supp. at 611 (footnote omitted, emphasis in original).

In spite of this finding, the court held that the car shuttlers were independent contractors, a finding based on facts showing the transient nature of the Avis-shuttler relationship.

We reverse and remand to determine the amount of Avis's liability for federal employment taxes.

While the district court's statements of fact are generally supported by the record (defining "employee" for employment tax purposes), it misapplied the law to those facts. The leading case defining "employee" for employment tax purposes is United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). In Silk, the Supreme Court considered whether two employers were required to withhold FICA assessments as to payments made to three groups of individuals.[2] The first employer, the Albert Silk Coal Co., operated a coal yard. It engaged men to unload coal cars at a fixed rate per ton of coal unloaded. The coal unloaders provided their own shovels. They worked for Silk when and if they pleased, and they were permitted to work for other coal

companies. See 331 U.S. at 706, 67 S. Ct. 1463. The coal yard also engaged truckers to deliver the coal, paying them at a fixed rate per ton. The truckers supplied their own trucks, their own laborers to aid in loading and unloading the coal, and they paid all expenses arising out of their trucking activity. They were not selected on the basis of seniority; rather they decided among themselves who was to make a given run.

The second employer in the Silk case was Greyvan Lines, Inc., which operated a trucking business in which it contracted with truckers in various locations to haul goods. These truckmen worked solely for Greyvan Lines. Like the Silk truckers, the Greyvan truckmen furnished their own trucks and paid their own costs. They supplied such labor and insurance as was necessary to carry on their trucking businesses. The truckers collected all payments, and forwarded them to Greyvan Lines, which paid them a commission.

The Supreme Court held that the coal loaders were "employees" of Silk Coal, as that term was and is used in the Social Security Act. It held that the Silk and Greyvan truckers were independent contractors, and thus not employees. The Court found that the employer's right to control "how 'the work shall be done' " was one factor to be considered in distinguishing employees from independent contractors, though not the foremost factor as the applicable Treasury Regulations suggested and suggest. See 331 U.S. at 714–715, 67 S.Ct. 1463; note 1, supra. Other factors of equal importance were the employee's investment in the equipment of his trade, his

---

2. *Silk* and Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), concern the meaning of "employee" as it was then used in the Social Security Act. But it is clear, and the parties agree, that the same standard controls the scope of "employee" as it appears in the FUTA and withholding tax provisions.

The present statutory definitions of "employee" in sections 3121(d)(2) and 3306(i) were not in effect when *Silk* and *Bartels* were decided. The predecessors

of these statutory definitions were added to the 1939 Code after *Bartels* and *Silk*, see sections 1 and 2 of H.J.Res. 296, 62 Stat. 438 (1948), to codify their result, at least so far as they related a common law test of employment, in the face of a proposed Treasury Regulation which would have given "employer" much broader scope. Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Higgins, 189 F.2d 865, 867 (2d Cir. 1951).

level of skill, his opportunity to profit from his own management skill, and the permanence of his relation to the "employer". 331 U.S. at 716, 67 S.Ct. 1463. Contract recitations that a worker is either an employee or contractor were found to have no effect on tax liability. Applying these standards, the Court noted that the coal unloaders provided only simple tools, and that they had no opportunity for profit, except by working at a faster or slower rate. It noted that they worked in the course of their employers' business. See id. at 717–718, 67 S.Ct. 1463. It found that the Silk and Greyvan truckers were small businessmen. They supplied their own trucks and hired their own labor. They undertook substantial costs and significant risks, and stood to profit by their own management ability. See id. at 718–719, 67 S.Ct. 1463.

Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.2d 1947 (1947), involved the same issue of statutory interpretation as the *Silk* case. In *Bartels*, the Court held that musicians employed by bandleaders were employees of the bandleaders, rather than of ballroom operators which booked the bands for limited engagements, despite the use of a booking contract that referred to the operators as "employers" of the musicians. The ballroom operators had no right to control the manner of playing while the bandleaders did. The ballroom-musician relationship was transient, while the bandleader-musician relationship was permanent. The bandleader had an opportunity for profit or loss from his management of the band. He understood the risk of paying musicians' salaries, and the various costs of doing business as a band. The bandleader organized and trained the musicians.

■ From *Silk* and *Bartels* it appears that at least seven factors are relevant in the present case to determine whether an employer-employee relationship exists:

1) If the person receiving the benefit of a service has the right to control the manner in which the service is performed, the person rendering the service may be an employee.

2) If a person rendering a service has a substantial investment in his own tools or equipment, he may be an independent contractor.

3) If a person performing a service undertakes a substantial cost, say by employing and paying his own laborers, he may be an independent contractor.

4) If a person performing a service has an opportunity to profit depending on his management skill, he may be·an independent contractor.

5) If a service rendered requires a special skill, the person rendering it may be an independent contractor.

6) If the relationship between a person rendering a service and the person receiving it is permanent, it may be an employment relationship.

7) If a person rendering a service works in the course of the recipient's business, rather than in some ancillary capacity, he may be an employee.[3]

■ Applying these criteria to the present case, it is evident that the car shuttlers were Avis employees. The district court erred in relying solely on facts tending to show the transient nature of the Avis-car shuttler relationship, overlooking facts which under the other criteria tend to establish that the shuttlers were Avis employees. Thus, as to the degree of control, the district

3. This list is not exhaustive, see Lifetime Siding, Inc. v. United States, 359 F.2d 657 (2d Cir.), cert. denied, 385 U.S. 921, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966), but it is sufficient to illustrate the error of the district court's one-dimensional approach. It accords with the sort of factors that we have applied to determine the common law of the employer-employee relationship. Id., Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Higgins, supra; Restatement (Second) of Agency § 220 (1958); cf. Illinois Tri-Seal Products, Inc. v. United States, 353 F.2d 216, 228, 173 Ct.Cl. 499 (1965).

court correctly found that the Avis Vehicle Transfer Contract evidences employer control of the manner of doing shuttling work. See 364 F.Supp. at 611. The car shuttlers had no investment in "car shuttling equipment". In that regard they were like the coal shovelers in *Silk*, and unlike the truckers in *Silk*. The car shuttlers undertook none of the costs of shuttling cars; all of those costs were fully reimbursed by Avis. In that respect they were like the *Silk* coal unloaders and unlike the *Silk* truckers, who undertook their own fuel and labor expenses. The car shuttlers had no opportunity to profit by their management skills. Their only control over their return lay in their ability to move cars more or less quickly, just as the *Silk* coal unloaders could control their compensation only to the extent that they shoveled more or less quickly. The shuttlers brought no particular skill to their jobs. Evidence of the hit-or-miss recruitment techniques employed by Avis suggests that it expected the shuttlers to have no special skill.

Under the facts of this case, only one of the *Silk* factors suggests that shuttlers were independent contractors. The district court examined the relationship between Avis and the shuttlers at some length and found that the relationship was transient. Its conclusion, based as it is on the shuttlers' non-participation in employment benefits, and on the haphazard recruiting and assignment policies employed by Avis, is surely correct. But transients may be employees. The *Silk* coal unloaders were employed from day to day and were no more "transient" than the shuttlers. Determination of whether individuals are "employees" for the purpose of federal employment taxes depends upon the totality of their circumstances. No single consideration governs. The district court found that one such consideration, the impermanence of the relationship, weighed toward "independent contractor". But it failed to consider the various other factors, factors due at least equivalent weight, which tend to indicate that shuttlers are employees.

The judgment of the District Court is reversed. The cause is remanded for a determination of the amount of Avis's tax liability.

ON PETITION FOR REHEARING

In its petition for rehearing, appellee raises the question of the status of those car shuttlers who, instead of being hired directly by Avis, were retained by "head shuttlers." These head shuttlers operate their own independent businesses serving several rental agencies. Under the criteria set forth in the court's opinion, those car shuttlers who were hired by and were under the exclusive control of such independent businessmen cannot be considered the employees of Avis. Cf. Bartels v. Birmingham, 332 U.S. 126, 132 (1947). The petition for rehearing is therefore granted for the limited purpose of adding to our opinion the following paragraph:

"The district court, in determining Avis' liability, shall exclude from the category of employees those car shuttlers who were hired by and were under the exclusive control of independent head shuttlers."

In all other respects we reaffirm our original decision.