EASTERN INVESTMENT CORP. and
Lowen Corporation, Plaintiffs–
Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 94–3029.

United States Court of Appeals,
Tenth Circuit.

March 1, 1995.

Brian G. Grace of Grace, Unruh & Pratt, L.C., Wichita, KS (Jana C. Werner, Grace, Unruh & Pratt, L.C., and Jack D. Flesher, Bever, Dye, Mustard & Belin, with him on the briefs), for appellants.

William J. Patton, Tax Div., Dept. of Justice, Washington, DC (Loretta C. Argrett, Asst. Atty. Gen., Ann B. Durney, Tax Div., Dept. of Justice, Washington, DC, and Randall K. Rathbone, U.S. Atty., Topeka, KS, of counsel, with him on the brief), for appellee.

Before ANDERSON and HOLLOWAY, Circuit Judges, and DOWNES,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Eastern Investment Corporation and its subsidiary, Lowen Corporation (collectively "Lowen"), appeal from the district court's judgment holding Lowen liable for federal employment taxes, penalties, and interest. For the reasons stated below, we conclude that the district court did not err and, therefore, affirm.

## BACKGROUND

Lowen Company Inc. (now Eastern Investment Corporation) was incorporated in Kansas in 1961. From the date of its incorporation until June 30, 1984, Lowen Company Inc. custom designed, manufactured, and marketed decals and real estate signs. In the late 1970s or early 1980s Lowen Company Inc. divided into two parts, the decal division and the real estate sign division. Lowen's decal division designs and manufactures custom decals, which are sold predominantly to large trucking fleets and to original equipment manufacturers. Decal sales, therefore, is a specialized and individualized business which requires the decal salesperson to be knowledgeable about Lowen's products. Appellants' App. at 136–37. It also requires extensive contact between the salesperson, the customer, and Lowen's home office because the decals are designed and manufactured to the customer's specifications. Lowen's sign division, however, does not require such a high level of specialization. The sign division predominantly makes real estate signs which are sold to real estate brokers, nationwide real estate accounts, and home builders. Although each customer has its own specific logo, design, and colors, the size and design of the real estate signs are fairly standard. *Id.*

In the early 1980s, a few states audited Lowen Company Inc. to collect sales tax for goods sold by Lowen employees within those states. In July 1984, apparently in response to these complications, Lowen Company Inc. underwent a corporate change. Lowen Company Inc. transferred all of its sales functions to a newly formed company, Lowen Sales Corporation (now Lowen Corporation), and decided to treat all of its sales representatives as independent contractors to prevent future exposure to state sales taxes. To effectuate its plan, on July 1, 1984, Lowen required all of its sales representatives, whether in the sign or decal division, to sign an "Independent Sales Representative Agreement" with the new corporation.

* The Honorable William F. Downes, District Judge, United States District Court for the District of Wyoming, sitting by designation.

There was, however, little or no difference in the way Lowen interacted with the sales representatives before and after July 1, 1984.

In 1987, the Internal Revenue Service ("IRS") audited Lowen and determined that all the Lowen salespersons were employees during the relevant period, January 1, 1984, through December 1, 1986. The IRS assessed federal employment taxes and various related penalties based on this determination. Lowen disagreed and filed the instant suits by paying the employment and withholding taxes attributable to one employee of each of the corporations and filing claims for refund. The government counterclaimed for the balance of the assessments.

Following a bench trial, the district judge concluded that of the 113 sales representatives at issue, 15 were employees and the remaining 98 were independent contractors. The court further concluded that the IRS properly assessed penalties and interest with respect to the taxes owed for those 15 employees. Appellants' App. at 175–76. The parties each filed motions to alter or amend the judgment. The trial court denied Lowen's motion, but sustained the government's motion to include three more decal salespersons on the list of employees.

On appeal, Lowen contends that the district court erred in (1) placing undue emphasis on a single factor—compensation based on fixed fees—in determining that 18 of its sales representatives were employees; (2) concluding that the IRS properly assessed penalties because it found Lowen had failed to show that it used ordinary business care and prudence and had reasonable cause for failing to file and pay taxes on these employees; and (3) concluding that Lowen owed interest on the unpaid taxes.

## DISCUSSION

### A. Employees or Independent Contractors

■ Lowen contends that, in determining the 18 sales representatives were employees, the district court placed undue emphasis on the single factor of compensation by fixed fees, and failed to consider the totality of the circumstances. Appellants' Br. at 41. Lowen concedes that the trial court's factual findings are correct, see Appellants' Br. at 14, but asserts that the court reached the wrong conclusion in applying the law to those facts. We review the district court's conclusions of law de novo. *Steiner Corp. Retirement Plan v. Johnson & Higgins*, 31 F.3d 935, 939 (10th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995); *see United States v. Wholesale Oil Co., Inc.*, 154 F.2d 745, 747 (10th Cir.1946); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

■ The term "employee" is defined in each of the statutes pertaining to the three types of taxes employers are required to withhold from the salaries of their employees, *see* 26 U.S.C. §§ 3121(d) (FICA), 3306(i) (FUTA), 3401(c) (income tax withholding), and guidelines for determining employee status are found in three substantially similar sections of the employment tax regulations, *see* 26 C.F.R. §§ 31.3121(d)–1(c) (FICA), 31.3306(i)–1 (FUTA), 31.3401(c)–1 (income tax). Consistent with these guidelines, courts have identified various factors relevant for determining whether an employer-employee relationship exists. *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–50, 91 L.Ed. 1947 (1947); *United States v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 1469–70, 91 L.Ed. 1757 (1947); *Dole v. Snell*, 875 F.2d 802, 804–05 (10th Cir.1989); *Doty v. Elias*, 733 F.2d 720, 722–23 (10th Cir.1984); *Marvel v. United States*, 719 F.2d 1507, 1514 (10th Cir.1983); *Avis Rent a Car Sys., Inc. v. United States*, 503 F.2d 423, 429 (2d Cir. 1974). Each factor may not have application to every situation, however, and no one of these factors in isolation is dispositive; rather, "it is the total situation that controls." *Bartels*, 332 U.S. at 130, 332 U.S. at 1550; *see Silk*, 331 U.S. at 719, 67 S.Ct. at 1471; *Dole*, 875 F.2d at 805; *Avis*, 503 F.2d at 430.

In analyzing the relationship between Lowen and its sales representatives, the district court used a 20–factor test based on the IRS interpretation of the applicable statutes and regulations as set forth in Rev.Rul. 87–41, 1987–1 C.B. 269. *See* Appellants' App. at 137–52. The district court's multi-factor test

encompassed each and every factor we have set forth in prior decisions, including "method of payment." *See, e.g., Dole,* 875 F.2d at 803, 805 (FLSA case); *Doty,* 733 F.2d at 722–23 (FLSA case); *Marvel,* 719 F.2d at 1514.

The district court, in its consideration of Lowen's method of payment, noted that "[u]nder the 1984 agreement, each [of the 18 individuals at issue on appeal] was paid on the basis of commissions plus a fixed fee, the amount of which was essentially the same as the salary and expenses paid prior to 1984." Appellants' App. at 168. The court found the evidence "uncontroverted" that "Lowen's intent in switching to the fixed fee was to place the individuals in the same compensation position." *Id.* Accordingly, the district court stated, "[i]f any one factor in this case is more determinative than any other, it is the distinction between salespersons who were paid a straight commission as opposed to those who were paid a commission plus a fixed monthly amount." *Id.* However, it was not until after extensively describing and analyzing the present facts in light of *all* 20 factors that the district court concluded that 18 of Lowen's sales representatives were employees. Moreover, the district court explicitly acknowledged that the presence or absence of one factor is not determinative of the nature of the relationship, *id.* at 156, and stated that it was persuaded by the "totality of the evidence," *id.* at 165.

The district court also explained that the method of payment, aside from being an independent factor to consider, significantly impacts other factors which are critical to the court's employee-independent contractor determination. The court stated that the payment of fixed fees affects the factor of "financial risk" because "[o]ne who obligates himself to pay another without any direct correlation to the performance of the payee assumes most of the financial risk of the relationship." *Id.* at 169. Accordingly, the court

determined, the fact that these 18 sales representatives could not realize a profit or suffer a loss as a result of their services (in addition to the profit or loss ordinarily realized by workers) weighed in favor of finding that these sales representatives were employees.[1] The court also suggested that the method of payment affects the significant factor of "control." The court stated: "Common sense if nothing else indicates that the payor of regular payments has a greater right of control over the payee." *Id.* at 169.

Moreover, in addition to these factors, there were other notable distinctions between the 18 individuals found to be employees and Lowen's remaining sales representatives. For example, the district court found that most if not all of these 18 individuals participated in Lowen's group health plan and Lowen paid the premiums. "If the salesperson opted to participate in the group health program, his or her premium was added to the fixed fee and then the salesperson was required to pay back that amount to Lowen." *Id.* at 153. Additionally, the overwhelming majority of the salespersons at issue on appeal were Lowen's decal representatives. *Id.* at 152; *see also id.* at 89, 356.

Throughout its 20–factor analysis, the district court continually noted significant differences in Lowen's relationship with its decal versus its sign representatives. For example, the district court noted that it was "abundantly clear that the sign salespersons were more independent than the decal salespersons.... Lowen exercised less control over the activities of the sign salespersons." *Id.* at 163 n. 16. The district court also found that decal representatives received more extensive training, *id.* at 140, had more extensive communication with in-house staff, *id.* at 142, were more likely to work exclusively for Lowen and receive nearly all their income from selling Lowen products, *id.* at 146, and only the decal division held annual sales meetings which the sales representa-

---

1. Lowen's former president clearly acknowledged that the method of payment impacted the Company's financial risk by stating that the decal sales division was

   primarily where the concentration of our employees were, we might be able to only afford one or two people a year. Most of the time

just one a year we tried to average because *you're talking about a large amount of overhead. You have your monthly expense whether they sold anything or not.*

Appellants' App. at 168–69 (emphasis in original).

tives were encouraged to attend, *id.* at 144. Furthermore, with the exception of four decal salespersons hired after 1984, each of these 18 individuals at issue had long-term relationships with Lowen, *id.* at 152, and the district court correctly acknowledged that "[a] continuing relationship between the worker and person or persons for whom the services are performed indicates that an employer-employee relationship exists." *Id.* at 145–46.

Finally, although the law is clear that Lowen's classification of a salesperson as employee or independent contractor is of no consequence, *see* 26 C.F.R. §§ 31.3121(d)–1(a)(3), 31.3306(i)–1(d), 31.3401(c)–1(e), the district court found that all of the 18 sales representatives who were working for Lowen in 1984 were, at that time, considered by Lowen to be employees and treated as employees of the Company. Appellants' App. at 168. Furthermore, Lowen unequivocally stated that the 1984 agreements were neither meant to nor did they change the status of the relationship with its sales representatives.[2] Thus, by Lowen's own argument, these 18 individuals would have remained employees, in Lowen's opinion, after July 1984.

For the foregoing reasons we are unable to conclude that the district court failed to consider the totality of the circumstances. Accordingly, we conclude that the district court did not err in deciding that 18 of Lowen's sales representatives were employees.

**B. Imposition of Penalty**

The government assessed additions and penalties against Lowen for failure to file a timely tax return, 26 U.S.C. § 6651(a), and failure to deposit taxes withheld from wages, 26 U.S.C. § 6656. In order to avoid the imposition of penalties under these sections, Lowen "bears the heavy burden of proving both (1) that the failure to file did not result from 'willful neglect,' (2) that the failure to file was 'due to reasonable cause.'" *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 689–90, 83 L.Ed.2d 622 (1985) (quoting Internal Revenue Code § 6651(a)(1)); *Jackson v. Commissioner,* 864 F.2d 1521, 1527 (10th Cir.1989). To establish reasonable cause, the taxpayer must demonstrate he exercised "ordinary business care and prudence." *Boyle,* 469 U.S. at 245, 105 S.Ct. at 689; *Sanders v. Commissioner,* 225 F.2d 629, 636 (10th Cir.1955), *cert. denied,* 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956); 26 C.F.R. § 301.6651–1(c)(1). "Willful neglect," on the other hand, "may be read as meaning a conscious, intentional failure or reckless indifference." *Boyle,* 469 U.S. at 245, 105 S.Ct. at 690.

Lowen contends that the district court erroneously concluded that Lowen failed to establish reasonable cause for treating these 18 employees as independent contractors for federal tax purposes. "Whether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements must be present to constitute 'reasonable cause' is a

---

**2.** Lowen's Chief Operating Officer, Tom Westfall, gave the following responses at trial:

Q [E]ffective, I guess, July 1, '84 forward did you, as chief operating officer of the company, did you all treat these people [the entire sales force] as if they were independent contractors?

A Well, the way I remember it we didn't— we didn't change the way we treated salesmen even though after this passed—I don't think we ever properly appreciated that fact and we pretty much operated the same as we always had even though they had different contracts.
. . . .
Q Explain to the Court what you did . . . just taking a hypothetical person who had been an employee who had had his insurance paid for and had taxes withheld from his pay and had expense money paid and even a base amount of money paid every month?

A [A]ttorneys that we were using came up with what they thought was a good term called fees, and we were concerned about what to do with the salary and the travel so we were told that it would be best to lump that into what we called a monthly or weekly fee . . . paid on a regular basis. As the thing evolved we found out there was more expense that we had overlooked. . . . There was extra social security. There was medical. All different things that we were running into that people who were strict contract labor basis are responsible for themselves that we had always taken care of and it would cause us to occasionally modify the fee structure so we got everything in there. But the net—what we tried to do was give 'em the same net they had been getting before. Appellant's App. at 429, 431–33.

question of law." *Boyle,* 469 U.S. at 249 n. 8, 105 S.Ct. at 692 n. 8; *Jackson,* 864 F.2d at 1527. Lowen does not dispute the district court's factual findings, but rather contends the law was applied incorrectly.

■ In attempting to establish reasonable cause, Lowen asserts that it relied on its attorneys to restructure the corporation, draft new independent contractor agreements, and ensure that its sales representatives were legally treated as independent contractors. Appellants' Br. at 20–21. Although reliance on professional advice under certain circumstances may be exculpatory, *see, e.g., Boyle,* 469 U.S. at 250, 105 S.Ct. at 692; *Jackson,* 864 F.2d at 1527, it is of no avail given the present facts.

Lowen introduced three letters from various attorneys to support its claim that it relied upon professional advice in concluding its sales representatives were independent contractors. *See* Appellants' App. at 455–72. Two of the letters address Lowen's liability for state sales and use taxes. Both letters assume, based on representations made by Lowen, that Lowen's sales representatives were, in fact, independent contractors. Thus, neither letter expresses an opinion as to whether the title "independent contractor" was an accurate representation of Lowen's relationship with its sales representatives.[3] The third letter Lowen introduced simply summarizes the conclusions of the prior two letters and additionally states: "I am enclosing for your review a tentative draft of the independent contractor agreement. Please let me know if you have any questions or comments after you have had an opportunity to review the document." Appellants' App. at 472.

All that Lowen has demonstrated is that it sought assistance in creating new contracts which could cloak its sales representatives with the title "independent contractor" regardless of whether that title appropriately reflected Lowen's relationship with its sales representatives. There is absolutely nothing to suggest that Lowen sought a professional opinion as to the appropriate and accurate status of its sales representatives, nor is there evidence that any of the various attorneys explored the relationship between Lowen and its sales representatives and then advised Lowen that the representatives were independent contractors. Because counsel never rendered an opinion or any advice on this issue, there was nothing upon which Lowen could have reasonably relied. Accordingly, we conclude that Lowen has failed to establish reasonable cause.[4] Because of our disposition of the reasonable cause issue, we need not decide whether Lowen's failure to file timely returns also constitutes "willful neglect."

### C. Interest

■ Finally, the parties disagree over the date at which interest begins to accrue on

---

3. For example, one of the letters provides: "As you know, we haven't made an independent investigation of the facts, so these responses are necessarily based on the information you've provided." Appellants' App. at 455.

4. Lowen also contends that, aside from any reliance on its attorneys, its good faith belief that these 18 individuals were independent contractors constitutes reasonable cause. Appellants' Br. at 27–29. However, we need not address whether or under what circumstances a good faith belief may constitute reasonable cause because Lowen's argument fails upon scrutiny of the evidence of its asserted good faith belief. Lowen admitted that it treated those of the 18 sales representatives who were with Lowen in 1984 as employees prior to the 1984 reorganization. *See* Appellants' App. at 477–94. Glenna Cooley, former national sales manager for the decal division, testified that there was little or no difference between the way the company interacted with the sales representatives after the 1984 reorganization compared with before, and that she did not change her treatment of the employees after they signed the new independent sales representative agreements. *See id.* The only difference was that prior to 1984, each employee was paid a salary plus expenses in addition to a commission; after 1984, each employee was paid a fixed fee, the amount of which was essentially the same as the salary and expenses paid prior to 1984. The district court concluded: "The evidence is uncontroverted that Lowen's intent in switching to the fixed fee was to place the individuals in the same compensation position." *Id.* at 168.

Thus, Lowen effectively admits that, although the 1984 reorganization may have changed the appearance of its relationship, it did not result in any substantive change in its relationship with these 18 individuals. Under these circumstances, Lowen could not have acquired a good faith belief that these individuals became independent contractors upon signing the new agreement in July 1984.

Lowen's additional tax liability pursuant to 26 U.S.C. § 6205(a)(1). The government contends that Lowen owes interest from the date of assessment, while Lowen contends that interest does not begin to accrue until there has been a final judicial determination of its tax liability. Because this issue deals with the construction of a statute and administrative regulation, we review the district court's decision de novo. *FDIC v. Canfield,* 967 F.2d 443, 445 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992).

The following relevant facts are undisputed. In 1987 the IRS began auditing Lowen, and in January 1989 issued "Notices of Proposed Assessment" with respect to Lowen's employment and unemployment taxes. Shortly thereafter, Lowen filed protests to the notices, and hearings were held throughout 1989. In January 1990, the Appeals Office informed Lowen that it had determined that Lowen's salespersons were employees, and sent Lowen an "Agreement to Assessment" form. On February 12, 1990, Lowen signed the agreement which contained the following language: "I [taxpayer] consent to immediate assessment and collection of any tax and penalties ... plus any interest provided by law.... Note: Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you believe you are entitled to a refund." On March 14, 1990, the IRS made the assessments (so-called Notice and Demand for Payment). One month later Lowen paid taxes plus interest for one sign and one decal salesperson and then filed claims for refund. On June 6, 1990, the district director disallowed the claims and Lowen filed the present suit. *See* Appellants' App. at 174.

Internal Revenue Code § 6205(a)(1) provides that certain underpayments of employment taxes may be adjusted "without interest" in the manner provided in the Treasury Regulations.[5] The relevant regulations provide, in sum, that such an adjustment is interest free until the due date of the return for the taxable period in which the error

causing the underpayment is "ascertained." *See* 26 C.F.R. § 31.6205–1(a)–(c). The regulations further provide that for the purpose of this section "an error [in underreporting certain employment taxes] is ascertained when the employer has sufficient knowledge of the error to be able to correct it." *Id.* § 31.6205–1(a)(4). Relying on this language, Lowen asserts that it cannot have "sufficient knowledge of the error" until error is ascertained by this court because, Lowen argues, "an error is ascertained only if it is not or no longer being contested." *See* Appellants' Reply Br. at 19, 20; Appellants' Br. at 39. We disagree.

The "error" in this case was Lowen's error in treating its sales representatives as independent contractors. The district court determined, and we agree, that Lowen had sufficient knowledge of this error once Lowen had exhausted all appeal rights within the Service, and the Appeals Office had notified Lowen of its determination that the sales representatives were employees. *See* Appellants' App. at 175. This interpretation is consistent with the plain language of the applicable statute and regulations. It also is consistent with Revenue Ruling 75–464 which is, although without the force and effect of law, entitled to "respectful consideration." *Foil v. Commissioner,* 920 F.2d 1196, 1201 (5th Cir.1990); *see Flanagan v. United States,* 810 F.2d 930, 934 (10th Cir.1987); *Storm Plastics, Inc. v. United States,* 770 F.2d 148, 154 (10th Cir.1985); *Merchants Indus. Bank v. Commissioner,* 475 F.2d 1063, 1064 (10th Cir.1973). Having concluded that the error was "ascertained" in January 1990—once Lowen exhausted all internal appeal rights—Lowen is liable for interest in accordance with 26 C.F.R. § 31.6205–1.

The decision of the district court is AFFIRMED.

---

**5.** Section 6205 applies to Federal Insurance Contribution Act taxes, Railroad Retirement Act taxes, and income tax withholding. It does not cover Federal Unemployment Tax Act taxes. 26 U.S.C. § 6205.