**In re SEATRAIN LINES, INC., Debtor.**

**Bankruptcy No. 81 B 10311.**

United States Bankruptcy Court, S.D. New York.

Feb. 4, 1985.

Stroock & Stroock & Lavan, New York City, for Seatrain Lines, Inc.

Glynn & Dempsey, Boston, Mass., for BSA–ILA Pension Trust Fund.

## DECISION ON OBJECTIONS TO PROOF OF CLAIM

EDWARD J. RYAN, Bankruptcy Judge.

On February 11, 1981, an involuntary petition under Chapter 11 of the Bankruptcy Code (the Code) was filed against Seatrain Lines, Inc. (Seatrain) and an order for relief was entered on that date. Seatrain is currently operating as debtor-in-possession pursuant to § 1108 of the Code.

Until shortly before the filing of the involuntary petition, certain of Seatrain's subsidiaries (Seatrain) were carriers of containerized cargo in the international shipping trade. Prior to September 14, 1979, Seatrain vessels took on and unloaded cargo in the port of Boston. In order to obtain the services of longshoremen to load and unload its vessels, Seatrain engaged independent stevedores, members of the Boston Shipping Association. The independent stevedores hired and paid members of the International Longshoremen's Association (ILA) to perform the work of loading and unloading the containers from Seatrain's vessels.

From September 14, 1979 through November 14, 1980, Seatrain shipped containers through the port of Boston on vessels owned and operated by other independent carriers which had no affiliation with Seatrain. These carriers also used independent stevedores to load and unload Seatrain's containers, and the stevedores in turn hired and paid ILA longshoremen to perform the actual work.

After November 14, 1980, Seatrain shipped no containers through the port of Boston.

Both prior to and after Septmeber 14, 1979, Seatrain did not pay the wages of the longshoremen directly; the workers were paid by the independent stevedores, who also controlled their hiring and firing. If longshoremen were injured while working on vessels carrying Seatrain containers, they filed compensation claims against the stevedores, not against Seatrain. After September 14, 1979, Seatrain did not directly supervise the work of the longshoremen except through the carriers and independent stevedores.

To obtain stevedoring services, Seatrain was obligated under a collective bargaining agreement with the ILA to make payments to the BSA–ILA Pension Trust Fund (Pension Fund or Fund), a multiemployer pension plan. These payments were based on (1) the number of containers loaded or unloaded in Boston (Container Royalties) and (2) the total tonnage of such containers loaded or unloaded (Tonnage Assessments).

On or about August 14, 1981, the Pension Fund filed proof of claim no. 1037 against Seatrain for $323,163.00, for Seatrain's alleged liability for withdrawal as an employer under the Fund, a multiemployer pension plan. This withdrawal liability was based on the provisions of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 et seq. (the Multiemployer Act), which applies to the Fund. Section 1381(a) of the Multiemployer Act provides that "[i]f an employer withdraws from a multiemployer plan . . . , then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." The Pension Fund also seeks priority status for its claim pursuant to § 507(a)(4) of the Code, as an unsecured claim for contributions to an employee benefit plan.

On June 21, 1983, Seatrain filed its objection to the claim, on the grounds that Seatrain is not an "employer" within the mean-

ing of the Multiemployer Act and that therefore Seatrain has no withdrawal liability for its cessation of contributions to the Fund.

The only issue presented is whether the ILA longshore-men were employees of Seatrain, so as to make Seatrain an "employer" within the meaning of the Multiemployer Act.

 It is well established that the relevant factors in determining whether an employer-employee realtionship exists include the right to control, method of payment, furnishing of equipment, and right to fire. *Pelow v. Sork Enterprises, Ltd.*, 39 A.D.2d 494, 337 N.Y.S.2d 218, 220 (3d Dep't 1972), *aff'd*, 33 N.Y.2d 944, 353 N.Y.S.2d 729, 309 N.E.2d 130 (1974). *Pelow* held that a workman hired by an independent contractor is not an employee of the company that engaged the independent contractor. *Id.* Similarly, the ILA longshoremen were hired, fired, paid, and subject to the direction and control of the stevedores, the independent contractors used first by Seatrain, and after September 1979, by the carriers that transported Seatrain's containers. Thus, after September 1979 Seatrain was twice-removed from the longshoremen. Thus, the common law indicia of an employment relationship are entirely absent.

Nor can Seatrain be considered an employer as defined by the applicable statute. Title IV of ERISA, the Multiemployer Act, does not define "employer". The definition of employer in Title I does not appear to encompass Seatrain.[1]

In addition, the House Ways & Means Committee, when considering the Multiemployer Act, rejected a proposed amendment which would have expressly included carriers such as Seatrain as employers under Title IV of ERISA. The proposed definition would have defined "employer" to include any ship's owner or operator "whose ships carry cargo subject to assessments to be paid to such plans." The Multiemployer Pension Plan Amendments Act of 1979: Hearing on H.R. 3904 Before the House Comm. on Ways and Means, 96th Cong. 2d Sess. 92 (1980). Congress's express rejection of this provision indicates its intent to exempt carriers such as Seatrain from withdrawal liability under the Multiemployer Act.

 Therefore, Seatrain is neither an employer under common law, nor within the meaning of the Multiemployer Act. The court holds that Seatrain has no withdrawal liability to the Pension Fund and claim no. 1037 is ordered expunged.[2]

---

1. "Employer" is defined in Title I of ERISA as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). However, Seatrain could not even be considered an "indirect" employer under this section, because the definitions of Title I are not necessarily applicable to Title IV.

*Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 370, 100 S.Ct. 1723, 1731, 64 L.Ed.2d 354 (1980).

2. Because of this holding, it is not necessary for the court to address the Pension Fund's claim for priority status under § 507(a)(4) of the Code.