**REFINED SUGARS, INC., Plaintiff,**

v.

**LOCAL 807 LABOR–MANAGEMENT PENSION FUND and the Board of Trustees of the Local 807 Labor-Management Pension Fund, Defendants.**

No. 83 Civ. 3030(MEL).

United States District Court,
S.D. New York.

April 15, 1986.

See also 580 F.Supp. 1487.

Seham, Klein & Zelman, New York City, for plaintiff; Roger H. Briton, of counsel.

O'Connor & Mangan, P.C., Long Island City, for defendants; J. Warren Mangan, of counsel.

LASKER, District Judge.

On September 29, 1982 the defendants, Local 807 Labor-Management Pension Fund ("Fund") and its Board of Trustees ("Trustees") authorized the pursuit of a claim against plaintiff, Refined Sugars, Inc. ("RSI"), for withdrawal liability pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, Pub.L. 93–406, 88 Stat. 832, as amended by the Multiemployer Pension Plan Amendments Act, Pub.L. 96–364, 94 Stat. 1208 (1980) ("MPPAA"). Thereafter, plaintiff filed this suit for a declaratory judgment and now moves for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure on the theory that it is not an "employer" in relation to the Fund and therefore cannot be subject to a withdrawal liability. Defendants have cross-moved for summary judgment dismissing the complaint, for a declaration that plaintiff is an employer in relation to the Fund and for referral of the issues regarding the amount of withdrawal liability to arbitration pursuant to ERISA as amended by MPPAA, 29 U.S.C. § 1381 *et seq.*

Plaintiff is a refiner of cane sugar for various industrial, wholesale and retail uses. The defendants represent the members of Truck Drivers Union Local 807 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America who were employed to distribute plaintiff's products. To operate and maintain its fleet of trucks, RSI contracted with the Francrete Corporation, an independent trucking company. Francrete negotiated with Local 807 regarding the various labor agreements which would govern relations between them, and Francrete has directly employed the drivers and made contributions to the Fund since November 15, 1976.

On June 30, 1982, RSI sold its fleet of trucks to Francrete. Francrete continued to serve RSI after the purchase of RSI's trucks, continued to employ Local 807 drivers, and continued to make contributions to the Fund on the drivers' behalf. Upon learning of the proposal to transfer ownership of the trucks from RSI to Francrete, the defendants attempted to assert a withdrawal liability claim against Francrete. However, this claim was dropped in November 1982. Instead, the defendants chose to assert their claim for withdrawal liability against RSI.

The issue before the court is thus whether RSI may be defined as an "employer" so as to be subject to a withdrawal liability claim pursuant to ERISA and MPPAA. For the reasons discussed below, plaintiff's motion is granted and defendants' cross-motion is denied. RSI cannot properly be deemed to be an employer subject to a withdrawal liability claim.

Although both plaintiff and defendants have moved for summary judgment, implying that both would maintain that there are no material factual disputes, there are some discrepancies between their Rule 3(g) Statements which could suggest that summary disposition would be inappropriate. However, because RSI's submission of affidavits and other supporting papers so strongly supports its version of the facts and thereby undermines the genuineness of the disputes, summary judgment is proper. *See Schering Corporation v. Home Insurance Company*, 712 F.2d 4, 9 (2d Cir.1983).

## RSI IS NOT AN EMPLOYER AS THAT TERM IS DEFINED BY ERISA

Withdrawal liability from multi-employer plans is addressed in Subtitle E of Subchapter III (also called Title IV) of ERISA, and it is to Title IV of the statute which plaintiff directs the court's attention for the applicable definition of "employer." Subtitle E does not define "employer," but Subtitle A of Title IV does define the conditions under which two or more enterprises shall be treated as a single employer in connection with pension plan terminations or withdrawals:

For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades or businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistént and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under Sec. 414(c) of Title 26.

29 U.S.C. § 1301(b)(1).

The Treasury Regulations prescribed under 26 U.S.C. § 414(c) define a group "under common control" as a parent-subsidiary group, brother-sister group or combined group and define these terms according to the degree and nature of common stock ownership. *See generally PBGC v. Ouimet Corporation*, 630 F.2d 4, 9–12 (1st Cir.1980).

Since Francrete, not RSI, acted as the direct employer, and since there is no common ownership between Francrete and RSI, there is no basis under the statute for extending withdrawal liability to RSI. RSI was neither the direct employer nor part of a single employer as defined by Title IV. Defendants are therefore without a statutory basis for their claim.

■ Defendants argue, however, that the definitional section of Subchapter I (also called Title I) is applicable to the MPPAA enacted in Title IV. Defendants' theory is that since the MPPAA provides no express definition and since the MPPAA amends ERISA, which does expressly define "employer," it is appropriate to construe the definition contained in Title I broadly and to apply it to Title IV. Defendants argue that the statute is remedial in nature and therefore should be liberally construed in order to effectuate congressional objectives.

Defendants' argument is flawed for two reasons. First, it ignores the express limitation "for purposes of this subchapter", which Congress included at the beginning of the definitional section of Title I. As the Supreme Court noted in a similar situation where a petitioner sought to apply a Title I definition to resolve a question arising under Title IV, "Definitions in that section are not necessarily applicable to Title IV, because they are limited by the introductory phrase, 'For purposes of this Title'." *Nachman v. PBGC*, 446 U.S. 359, 370, 100 S.Ct. 1723, 1731, 64 L.Ed.2d 354 (1980). Furthermore, had Congress intended the definitional section of Title I to be generally applicable to Title IV, it is reasonable to believe that it would not have made the specific incorporation found in section 1301(a)(1), which linked the definition of "administrator" for the purposes of Title IV to the definition of "administrator" supplied in Title I. Had Congress intended its Title I definition of "employer" to be applied in Title IV, it could have expressed this intention as it did in section 1301(a)(1). Since Congress did not extend the Title I definition of "employer," it would be inappropriate to ignore the express limitation placed on Title I definitions.

The second flaw in defendants' argument that the Title I definition of "employer" is applicable to Title IV withdrawal liability cases is that it ignores the qualifier within the Title I definition of "employer." Title I defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, *in relation to an employee benefit plan*." 29 U.S.C. § 1002(5) (emphasis added). Thus, RSI could not be considered an "employer" even if, as defendants argue, Title I definitions were applicable, because RSI neither acted directly as an employer nor indirectly in the interests of Francrete in relation to the Fund.

The undisputed evidence establishes that as to the pension fund, it was Francrete that negotiated with Local 807 and that it was Francrete that made contributions to and filed remittance reports with the Fund. Furthermore, the Fund treated Francrete, not RSI, as the employer; and it therefore seems clear that it was Francrete, not RSI, that acted "directly as an employer ... in relation to" the Fund. There is no evi-

dence that RSI acted "indirectly in the interest of" Francrete "in relation to" the Fund. In fact, the evidence shows that the last time RSI communicated with the Fund at all prior to the assertion of this claim was in a letter of February 4, 1977 in which RSI advised the Fund that RSI was not party to a contract with Local 807.

Thus, neither under Title IV nor under Title I is there a basis for concluding that RSI is an employer subject to defendants' claim for withdrawal liability.

## RSI IS NOT AN EMPLOYER BASED ON COMMON LAW CRITERIA

■ The defendants next argue that RSI is an employer based on common law criteria. The argument is without merit. To begin with, it is generally inappropriate to apply common law standards, developed in state courts in a variety of unrelated contexts to cases arising under a particular federal statute "intended to solve a national problem on a national scale." *NLRB v. Hearst Publications*, 322 U.S. 111, 123, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1944). However, even if common law criteria were an acceptable means for determining whether an entity was an "employer" for purposes of assessing withdrawal liability under ERISA, RSI would nevertheless not be deemed an employer.

Under the common law, the existence of an employer-employee relationship depends upon a variety of factors, any one of which may be controlling. These factors may include:

1. Right to control and supervise the manner in which the labor is performed;

2. Ownership of the tools or equipment needed to perform the work;

3. Ownership of the premises at which the work is performed;

4. Responsibility for the expenses involved;

5. Degree to which profit depends on management skill;

6. Relationship of the work to the regular business of the recipient;

7. Manner of payment;

8. Right to hire and fire;

9. Offering of services to the general public rather than the individual concern; and,

10. Custom in the trade.

*See Avis Rent-a-Car System, Inc. v. United States*, 503 F.2d 423, 429 (2d Cir. 1974); *May Freight Service, Inc. v. United States*, 462 F.Supp. 503, 507 (E.D.N.Y. 1978); *Pelow v. Sork Enterprises, Ltd.*, 39 A.D.2d 494, 337 N.Y.S.2d 218, 220 (3d Dept. 1972), *aff'd*, 33 N.Y.2d 944, 353 N.Y.S.2d 729, 309 N.E.2d 130 (1974).

Although RSI owned the equipment and the premises, and paid expenses as a result of the cost-plus contract, RSI did not supervise the manner in which the labor was performed, did not control the manner of payment, did not have a right to hire or fire drivers, did not contribute to the plan, did not negotiate any collective bargaining or other agreement, nor did it offer services to the public. In *In re Seatrain Lines, Inc.*, 46 B.R. 320 (S.D.N.Y.1985), a withdrawal liability claim was asserted against Seatrain. Seatrain was party to a union contract and made payments to the multi-employer pension fund asserting the claim, but it was nevertheless held that the "common law indicia of an employment relationship (were) entirely absent". *Id.* The court based its conclusion on the fact that the workers were "hired, fired, paid, and subject to the direction and control of" the independent contractor hired by Seatrain. *Id.*

RSI is even less connected with the status of employer than Seatrain. Local 807 drivers were hired, fired, paid, and subject to the direction and control of Francrete, not RSI. A company which hires an independent contractor is presumed not to be the employer of the independent contractor's employees. *See e.g., Avis Rent-a-Car System, Inc. v. United States*, 503 F.2d 423, 430 (2d Cir.1974); *Pelow v. Sork Enterprises, Ltd.*, 39 A.D.2d 494, 337 N.Y. S.2d 218 (3d Dept.1972), *aff'd*, 33 N.Y.2d 944, 353 N.Y.S.2d 729, 309 N.E.2d 130

(1974). The evidence here does not overcome the presumption.

## RSI IS NOT A JOINT EMPLOYER WITH FRANCRETE

■ Defendants' third argument is that RSI is subject to a withdrawal liability as a joint employer with Francrete. "The existence of a joint employer relationship depends on the control which one employer exercises or potentially exercises over the labor relations policy of the other." *North American Soccer League v. NLRB*, 613 F.2d 1379 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 128 (1980). More specifically, the National Labor Relations Board has stated that, for the purposes of the National Labor Relations Act, to establish joint employer status, "there must be a showing that the employer meaningfully affects matters relating to the employment relationship such as hiring, firing, discipline, supervision and direction." *TLI Inc. and Crown Zellerbach Corp.*, 271 NLRB No. 128 (1984).

RSI argues that it is not a joint employer with Francrete, but that even if joint employer status were established, it would nevertheless be an insufficient basis to render a non-signatory enterprise liable for a withdrawal liability. An examination of defendants' allegation lends support to RSI's argument.

As their best evidence of the degree to which RSI exercised control over the labor relations of Francrete, the Trustees and the Fund cite the so-called "Dunst affair". The "Dunst affair" involved Francrete's dismissal of Joseph Dunst, one of Francrete's Local 807 drivers, and the unfair labor practice case which followed. Defendants claim that an RSI dispatcher was "involved" in the decision to dismiss Dunst. Defendants note that RSI paid Francrete's expenses in defending the unfair labor practice charges and that RSI determined

whether to take exception to the Administrative Law Judge's decision. The decision lends support to the proposition that it was Francrete, not RSI, that controlled Francrete's labor relations.[1] The decision indicates that there were several occasions when Francrete found it necessary to reprimand Dunst and that it was Francrete's management which recommended that Dunst be dismissed. The decision further finds that it was Francrete that eventually dismissed Dunst. The only mention of RSI in the decision is as Francrete's chief customer. There was no evidence of RSI dispatcher complaints nor of any RSI involvement at all. RSI's payment of Francrete's legal expenses and its participation in the decision not to appeal both flowed naturally from the cost-plus feature of the contract between RSI and Francrete and are insufficient to establish a joint employer relationship between RSI and Francrete as to Dunst and his fellow employees.

Except for the "Dunst affair," the defendants offer no evidence to support their claim that RSI and Francrete were joint employers. The "Dunst affair," moreover, seems to offer stronger evidence of Francrete's independent control of its labor relations than of any shared control. Defendants have failed to show that RSI had any meaningful control over the labor relations of Francrete, or that RSI was a joint employer with Francrete.

Finally, defendants suggest that RSI's joint employer status is evidenced by RSI's control over management decisions. In particular, the defendants claim that "RSI called the shots because it paid the bills." However, any control which RSI may have exercised through its payment on the contract would not, as a matter of law, render it a joint employer.

There is therefore no evidence from which to conclude that RSI was a joint employer.

---

1. A copy of the Administrative Law Judge's decision is attached as Exhibit C to the Reply Affidavit of William Bruder (Dec. 1985).

## CONCLUSION

Withdrawal liability claims are governed by Title IV of ERISA which states that two or more employers shall be treated as a single employer when they are under common control. Common control is defined in terms of common ownership. Since there is no common ownership between RSI and the direct employer, Francrete, there is no statutory basis for extending withdrawal liability to RSI.

Title I definitions which are not specifically incorporated in Title IV are not applicable to Title IV since Congress made its exception to the express limitation to the definitions of Title I clear. The Title I definition of "employer" is therefore not the proper definition of "employer" as the term is used in Title IV. Even if the Title I definition applied, however, it would be insufficient to reach RSI because RSI acts neither directly as the drivers' employer nor indirectly in the interests of the drivers' employer in relation to the Fund.

Common law standards are inappropriate because they were developed in state courts in contexts unrelated to the specific situations which the statute was designed to address. Furthermore, even measured by common law criteria, RSI is not properly considered the employer of the Local 807 drivers because RSI merely utilized the service of an independent contractor who employed the drivers; RSI did not itself hire, fire, direct, or control the drivers.

For similar reasons, RSI could not properly be deemed a joint employer. There was simply no evidence that RSI had or exercised the requisite degree of control of the labor relations of Francrete.

RSI is not an employer of the Local 807 drivers and is not subject to a withdrawal liability claim under ERISA as amended by the MPPAA.

RSI's motion for summary judgment is granted, and defendants' cross-motion is denied.

Submit judgment on notice.