T.C. Summary Opinion 2001-10

UNITED STATES TAX COURT

WILEY L. BARRON, CPA, LTD., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14168-99S.                    Filed February 7, 2001.

Wiley L. Barron (an officer), for petitioner.

<u>Ann L. Darnold</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case is before the Court
on a petition for a redetermination of a Notice of Determination
Concerning Worker Classification Under Section 7436.[1]  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  See sec. 7436(c).

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

In the Notice of Determination Concerning Worker Classification Under Section 7436 (notice of determination), respondent determined: (1) For 1994 through 1996, Wiley L. Barron is to be legally classified as one of petitioner's employees for purposes of Federal employment taxes under subtitle C of the Internal Revenue Code; and (2) petitioner is not entitled to relief from this classification under section 530 of the Revenue Act of 1978. These determinations have given rise to the following three issues for decision by the Court:

(1) Whether the statute of limitations bars assessment of petitioner's employment tax liabilities for the taxable periods in issue. We hold that it does not.

(2) Whether Wiley L. Barron was an employee of petitioner for the taxable periods in issue. We hold that he was.

(3) Whether petitioner is eligible for relief pursuant to section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885. We hold that petitioner is not eligible for such relief.

## Background

Most of the facts have been stipulated, and they are so found. The stipulated facts and attached exhibits are incorporated herein by this reference.

Petitioner's sole office was located in Pine Bluff, Arkansas, at the time that its petition was filed with the Court.

A. <u>Wiley L. Barron, CPA, Ltd.</u>

Wiley L. Barron, CPA, Ltd. (petitioner) is an S corporation that was formed on or about January 2, 1990.  Since the date of its inception, petitioner has been engaged in the business of providing accounting services.

Wiley L. Barron (Mr. Barron) is, and has been for many years, a certified public accountant (C.P.A.).  Mr. Barron is petitioner's president and sole shareholder, and he is the only C.P.A. who performs services for petitioner.  The only other individuals who perform services for petitioner are two employees who provide clerical and support services.[2]

As petitioner's president, Mr. Barron exercises exclusive authority over all of petitioner's affairs.  He is solely responsible for making management decisions and for controlling and directing every facet of petitioner's business.

B. <u>Petitioner's Income Tax Returns</u>

Petitioner filed Form 1120S (U.S. Income Tax Return for an S Corporation) for each of the calendar years 1994, 1995, and 1996.  On Schedule M-2 of these returns, petitioner reported distributions other than dividend distributions in the following amounts:

---

[2]  The status of these two service providers as employees of petitioner is not in issue.

| Year | Distribution |
|------|--------------|
| 1994 | $56,352 |
| 1995 | 53,257 |
| 1996 | 83,341 |

C. Form W-2

In 1994, Mr. Barron received a salary from petitioner in the amount of $2,000.  In contrast, Mr. Barron did not receive a salary from petitioner in either 1995 or 1996.

For 1994, petitioner issued Form W-2 (Wage and Tax Statement) to Mr. Barron.  The Form W-2 was issued in respect of the salary paid to Mr. Barron for that year.  The form reflects the payment of wages and the withholding of taxes as follows:

| Wages/Withholding | Amount |
|-------------------|--------|
| Wages, tips, other compensation | $2,000 |
| Federal income tax withheld | -0- |
| Social Security wages | 2,000 |
| Social Security tax withheld | 124 |
| Medicare wages and tips | 2,000 |
| Medicare tax withheld | 29 |
| State wages, tips, etc. | 2,000 |
| State income tax withheld | -0- |

The payment of wages and the withholding of taxes were for the fourth quarter of 1994.

Petitioner did not issue a Form W-2 to Mr. Barron for either 1995 or 1996.[3]

---

[3]  The record suggests that other than for $2,000 of compensation in 1994, Mr. Barron reported income from petitioner as passthrough of S corporation income, pursuant to sec. 1366, on Part II of Schedule E (Supplemental Income and Loss) of his individual income tax returns.  We note that a shareholder's share of an S corporation's income is not subject to self-employment tax.  See Durando v. United States, 70 F.3d 548, 550

(continued...)

D. Employment Tax Returns

Petitioner timely filed Forms 941 (Employer's Quarterly Federal Tax Return) for the calendar quarters of 1994, 1995, and 1996.

On its Form 941 for the fourth quarter of 1994, petitioner included in the line for "Total wages and tips subject to withholding plus other compensation" the $2,000 reported as wages on the Form W-2 issued to Mr. Barron for 1994. Similarly, in each of the lines for "Taxable social security wages" and "Taxable Medicare wages and tips", petitioner included the $2,000. Finally, the amount reported by petitioner as "Total taxes" for the quarter included the Social Security and Medicare taxes withheld from Mr. Barron's wages.

Except for the $2,000 reported as wages on the Form W-2 issued to Mr. Barron for 1994, which amount was reported on Form 941 for the fourth quarter of 1994, petitioner did not include any amount in respect of Mr. Barron on Form 941 for any calendar quarter of 1994, 1995, or 1996.

Petitioner also timely filed Forms 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return) for 1994, 1995, and 1996.

On its Form 940 for 1994, petitioner included in the line for "Total taxable wages" the $2,000 reported as wages on the

[3](...continued)
n.5, 552 (9th Cir. 1995).

Form W-2 issued to Mr. Barron for 1994, and petitioner computed its liability for FUTA tax accordingly.

Except for the $2,000 amount reported as wages on the Form W-2 issued to Mr. Barron for 1994, which amount was reported on Form 940 for 1994, petitioner did not include any amount in respect of Mr. Barron on Form 940 for 1994, 1995, or 1996.

E. Employment Tax Examination

In 1997, respondent commenced an examination of petitioner's employment tax liabilities.

In May 1997, petitioner executed Form SS-10 (Consent to Extend the Time to Assess Employment Taxes), agreeing to extend through July 31, 1998, the period of limitations for assessing additional FUTA tax liability reportable on Form 940 for the calendar year 1994. Respondent executed the consent in June 1997.

In February 1998, petitioner executed another Form SS-10, this time agreeing to extend through April 15, 1999, the period of limitations for assessing (1) additional FUTA tax liability reportable on Form 940 for the calendar year 1994 and (2) additional employment tax liabilities reportable on Form 941 for each of the four calendar quarters of 1994. Respondent also executed the consent in February 1998.

Based on statistical data compiled by Robert Half International, Inc., respondent's employment tax agent proposed

that reasonable compensation for a C.P.A. in Arkansas like Mr. Barron with petitioner's type of practice for 1994, 1995, and 1996 would be $45,000, $47,500, and $49,000, respectively. In view of the fact that petitioner had only reported compensation paid to Mr. Barron for the fourth quarter of 1994 in the amount of $2,000, respondent's agent further proposed increases in petitioner's employment taxes, and additions to tax under section 6656 for failure to make deposit of taxes, for the calendar quarters in, and the calendar years of, 1994, 1995, and 1996.

On February 20, 1998, petitioner executed Forms 2504 (Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment), agreeing to the immediate assessment and collection of the increases in its employment taxes and additions to tax under section 6656, as proposed by respondent's employment tax agent. On March 30, 1998, respondent assessed these increases in petitioner's employment taxes and additions to tax.

F. Petitioner's Offer in Compromise

On December 8, 1998, respondent received from petitioner Form 656 (Offer in Compromise). The Offer in Compromise, which was submitted by petitioner on the basis of doubt as to liability, encompassed petitioner's employment tax liabilities for the calendar quarters in, and the calendar years of, 1994, 1995, and 1996.

The Offer in Compromise provided, in relevant part, as follows:

> By submitting this offer, I/we understand and agree to the following conditions:

>       \*    \*    \*    \*    \*    \*    \*

> (m) The offer is pending starting with the date an authorized IRS official signs this form and accepts my/our waiver of the statutory periods of limitation. The offer remains pending until an authorized IRS official accepts, rejects or acknowledges withdrawal of the offer in writing. \* \* \*

> (n) The waiver and suspension of any statutory periods of limitation for assessment and collection of the amount of the tax liability described \* \* \* [above], continues to apply: while the offer is pending (see (m) above) \* \* \* and for one additional year beyond each of the time periods identified in this paragraph.

On December 14, 1998, an authorized official signed the Offer in Compromise on behalf of respondent and accepted the waiver of the statutory period of limitations set forth in paragraph (m) of the offer.

G. Abatement of the March 30, 1998 Employment Tax Assessment

On May 3, 1999, respondent abated the assessment made against petitioner on March 30, 1998, for employment taxes and additions to tax under section 6656. Respondent took this action after discovering that the Forms 2504 executed by petitioner on February 20, 1998, did not include the waiver paragraph required by Notice 98-43, 1998-2 C.B. 207.[4]

---

[4] Notice 98-43, 1998-2 C.B. 207, sets forth new procedures

(continued...)

H. Rejection of Petitioner's Offer in Compromise

By letter dated May 13, 1999, respondent rejected petitioner's Offer in Compromise. The letter stated in relevant part as follows:

> This refers to your offer of $500.00, submitted to compromise your unpaid employment tax liabilities for the tax periods shown above.

---

[4](...continued)
under section 7436 for processing employment tax cases involving worker classification and sec. 530 of the Revenue Act of 1978. Notice 98-43 provides in relevant part as follows:

AGREED SETTLEMENTS
If the taxpayer wishes to settle the worker classification and ¶ 530 issues on an agreed basis before issuance of a Notice of Determination, the taxpayer must formally waive the restrictions on assessment contained in §§ 7436(d)(1) and 6213. This will generally be accomplished by execution of an agreed settlement that contains the following language:

> I understand that, by signing this agreement, I am waiving the restrictions on assessment provided in sections 7436(d) and 6213(a) of the Internal Revenue Code of 1986.

The Service will not assess employment taxes attributable to worker classification or § 530 issues unless either the Service has issued a Notice of Determination to the taxpayer and the 90-day period for filing a Tax Court petition has expired or, alternatively, the taxpayer has waived the restrictions on assessment. If the Service erroneously makes an assessment of taxes attributable to worker classification and § 530 issues without first either issuing a Notice of Determination or obtaining a waiver of restrictions on assessment from the taxpayer, the taxpayer is entitled to an automatic abatement of the assessment. However, once any such procedural defects are corrected, the Service may reassess the employment taxes to the same extent as if the abated assessment had not occurred.

We are sorry, but your offer is rejected because the tax is held to be legally due and an amount larger than the offer appears to be collectible. We do not have authority to accept an offer in these circumstances.

## I. The Notice of Determination

On May 24, 1999, respondent sent to petitioner a Notice of Determination Concerning Worker Classification Under Section 7436. The notice determined that Mr. Barron should be classified as an employee for purposes of Federal employment taxes under subtitle C of the Internal Revenue Code for the calendar quarters in, and the calendar years of, 1994, 1995, and 1996. The notice also determined that petitioner was not entitled to treatment under section 530 of the Revenue Act of 1978 with respect to Mr. Barron.[5]

On August 24, 1999, petitioner filed a petition under section 7436 contesting respondent's determinations.

---

[5] The determinations made by respondent in the Notice of Determination reflect petitioner's liabilities as originally proposed by respondent's employment tax agent, described supra in E.

## Discussion

### Issue 1: Statute of Limitations[6]

Petitioner contends that assessment and collection of any additional employment tax liability for the taxable periods in issue is barred by the statute of limitations. We disagree for the following reasons.

As a general rule, section 6501(a) requires that any tax be assessed within 3 years after the return was filed. Section 6501(b) sets forth rules providing when a return is deemed to have been filed.

As applicable herein, in the case of FUTA taxes reportable on Form 940, a return is due on or before January 31 of the year following the calendar year for which the return is required. See sec. 6071(a); sec. 31.6071(a)-1(c), Employment Tax Regs. See also sec. 31.6011(a)-3, Employment Tax Regs., regarding the requirement for filing such a return. However, in case of an early return, the return is deemed to have been filed on the last day prescribed therefor. See sec. 6501(b)(1).

---

[6] At the time of trial, as well as when the posttrial briefs were filed, the Court had not yet decided whether issues related to the statute of limitations were cognizable in an action for redetermination of employment status. Subsequently, it was decided that when the jurisdiction of the Court has been properly invoked pursuant to sec. 7436, the Court may properly decide whether the issuance of the Commissioner's notice of determination is barred by the expiration of the period of limitations under sec. 6501. See Neely v. Commissioner, 115 T.C. 287 (2000).

As applicable herein, in the case of FICA taxes reportable on Form 941, the return is due on or before the last day of the first calendar month following the calendar quarter for which the return is required.  See sec. 6071(a); sec. 31.6071(a)-1(a), Employment Tax Regs.; see also sec. 31.6011(a)-1, Employment Tax Regs., regarding the requirement for filing such a return.  However, if a return for a calendar quarter is filed before April 15 of the following calendar year, the return shall be deemed to have been filed on April 15 of the following calendar year.  See sec. 6501(b)(2).

Also relevant to our discussion is section 6501(c)(4), which provides an exception to the general rule of section 6501(a) prescribing a 3-year period of limitations.  Thus, as relevant herein, section 6501(c)(4) provides that where, before the expiration of the period of limitations otherwise applicable to the assessment of a tax, both the taxpayer and the Commissioner have consented in writing to its assessment after such time, the tax may be assessed at any time before the expiration of the period agreed upon.  In addition, the period so agreed upon may be further extended by subsequent agreements made in writing before the expiration of the period previously agreed upon.  See sec. 6501(c)(4).

Further relevant to our discussion is section 6503(a)(1). That section, as applicable to the present action by virtue of

section 7436(d)(1), provides that the issuance of a notice of determination serves to suspend the running of the period of limitations on assessment for the period during which the Commissioner is prohibited from making the assessment, and for 60 days thereafter.  The period during which the Commissioner is prohibited from making the assessment begins on the date on which the notice of determination is issued and, if an action for redetermination of employment status is commenced, ends on the date on which the decision of this Court becomes final.  See sections 6213(a) and 7481, as applicable to the present action by virtue of section 7436(d)(1).

We now apply these principles to the taxable periods in issue.

A. <u>1994 and 1995</u>

The regular 3-year period of limitations for assessment of employment taxes reportable on Form 941; i.e., FICA taxes, for the calendar quarters ended March 31, June 30, September 30, and December 31, 1994, expired on April 15, 1998.  Prior to that date, however, both petitioner and respondent executed Form SS-10 (Consent to Extend the Time to Assess Employment Taxes), agreeing to extend the period of limitations to April 15, 1999.

The regular 3-year period of limitations for assessment of employment taxes reportable on Form 941 for the calendar quarters ended March 31, June 30, September 30, and December 31, 1995,

expired on April 15, 1999.

The regular 3-year period of limitations for assessment of unemployment tax reportable on Form 940, i.e., FUTA tax, for the calendar year 1994, expired on January 31, 1998. Prior to that date, however, both petitioner and respondent executed Form SS-10, agreeing to extend the period of limitations to July 31, 1998. Prior to this second date, however, both petitioner and respondent executed Form SS-10, agreeing to extend the period of limitations to April 15, 1999.

The regular 3-year period of limitations for assessment of unemployment tax reportable on Form 940 for the calendar year 1995, expired on January 31, 1999.

On December 14, 1998, prior to the expiration of the foregoing periods of limitations, one of respondent's authorized officials signed the Offer in Compromise that petitioner had submitted earlier that month with respect to (inter alia) petitioner's employment tax liabilities for the calendar quarters in, and the calendar years of, 1994 and 1995. This action by respondent's authorized official served to suspend the running of the period of limitations on assessment of petitioner's employment tax liabilities that were covered by the offer. As applicable herein, such suspension extended from December 14, 1998, through May 13, 1999; i.e., the date on which respondent rejected the offer, and for 1 thereafter.

By virtue of the above-described waivers (Forms SS-10) and Offer in Compromise (Form 656), respondent's issuance of the notice of determination on May 24, 1999, occurred before the expiration of the period of limitations on assessment of petitioner's employment taxes for periods ending in 1994 and 1995. Accordingly, the statute of limitations does not bar assessment of employment taxes for those periods.

Petitioner contends that the abatement on May 3, 1999, of the employment tax assessment (see Background, supra, section G.) served to annul the waiver provisions of the Offer in Compromise. We disagree. Petitioner in fact executed Form 656 and thereby agreed to the suspension of the period of limitations with respect to the employment taxes that were subject to the offer.[7]

B. 1996

The regular 3-year period of limitations for assessment of employment taxes reportable on Form 941; i.e., FICA taxes, for the calendar quarters ended March 31, June 30, September 30, and December 31, 1996, expired on April 15, 2000. The regular 3-year

---

[7] At trial, petitioner introduced a document dated June 13, 2000, purporting to withdraw the Offer in Compromise previously submitted in Dec. 1998. In petitioner's view, withdrawal of the offer would serve to negate the waiver of the statute of limitations therein. However, petitioner may not, by such simple expedient, eliminate the consequences of its action in submitting the offer. More precisely, paragraph (m) of the offer specifically states that the offer remains pending "until an authorized IRS official * * * acknowledges withdrawal of the offer in writing."

period of limitations for assessment of unemployment tax reportable on Form 940; i.e., FUTA tax, for the calendar year 1996, expired on January 31, 2000.

On May 24, 1999, well before the earlier of January 31, 2000, and April 15, 2000, prior to the expiration of the foregoing periods of limitations, respondent sent to petitioner the Notice of Determination of Worker Classification Under Section 7436. Thereafter, on August 24, 1999, petitioner filed its petition under section 7436 commencing the present action for redetermination of employment status.

The issuance of the notice of determination served to suspend the running of the period of limitations. Likewise, the commencement of the action for redetermination serves to further suspend the running of such period. Accordingly, and contrary to petitioner's protestations to the contrary, it is clear that the statute of limitations does not bar assessment of employment taxes for periods ending in 1996.

Issue 2: Whether Mr. Barron Is An Employee

Chapter 21 of subtitle C of the Internal Revenue Code imposes the FICA tax, and chapter 23 of subtitle C of the Internal Revenue Code imposes the FUTA tax. For purposes of chapter 21, section 3121(d)(1) specifically includes within the definition of the term "employee" any officer of a corporation. For purposes of chapter 23, and as relevant herein, section

3306(i) provides that the term "employee" has the meaning assigned to such term by section 3121(d).

Section 31.3121(d)-1(b), Employment Tax Regs., which is applicable to chapter 21 of subtitle C, provides in relevant part as follows:

> Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. * * *

See also sec. 31.3306(i)-1(e), Employment Tax Regs., for the same provision applicable to chapter 23 of subtitle C.

In the present case, Mr. Barron was the only C.P.A. who performed services for petitioner, and indeed, Mr. Barron was the only individual who performed professional services for petitioner. Further, as petitioner's president, Mr. Barron exercised exclusive authority over all of petitioner's affairs, and he was the individual who was solely responsible for making management decisions and for controlling and directing every facet of petitioner's business. Under these facts, it is clear that Mr. Barron is not excluded from the general rule of sections 31.3121(d)-1(b), and 31.3306(i)-1(e), Employment Tax Regs., that a corporate officer is an employee. See secs. 3121(d)(1), 3306(i). We hold, therefore, that as a corporate officer who performed substantial services for petitioner, Mr. Barron is an

employee whose compensation is subject to FICA and FUTA taxes.
See <u>Spicer Accounting, Inc. v. United States</u>, 918 F.2d 90, 92-93
(9th Cir. 1990); <u>Western Mgmt., Inc. v. United States</u>, 45 Fed.
Cl. 543 (2000); <u>Darrell Harris, Inc. v. United States</u>, 770 F.
Supp. 1492, 1496-1497 (W.D. Okla. 1991); <u>Radtke v. United States</u>,
712 F. Supp. 143, 145 (E.D. Wis. 1989), affd. per curiam 895 F.2d
1196 (7th Cir. 1990).

<u>Issue 3: Whether Petitioner Is Eligible for Section 530 Relief</u>

Notwithstanding our conclusion that Mr. Barron is an
employee, section 530 of the Revenue Act of 1978, Pub. L. 95-600,
92 Stat. 2763, 2885 (section 530), as amended, would relieve
petitioner of employment tax liability for the periods in issue
if the requirements of section 530 are satisfied.  Subsection (a)
of that section provides in relevant part as follows:

> (a) Termination of certain employment tax liability
> * * *.--
>     (1) In general.--If--
>         (A) for purposes of employment taxes,
>     the taxpayer did not treat an individual as
>     an employee for any period * * *, and
>         (B) in the case of periods after
>     December 31, 1978, all Federal tax returns
>     (including information returns) required to
>     be filed by the taxpayer with respect to such
>     individual for such period are filed on a
>     basis consistent with the taxpayer's
>     treatment of such individual as not being an
>     employee,
> then for purposes of applying such taxes for such
> period with respect to the taxpayer, the individual
> shall be deemed not to be an employee unless the
> taxpayer had no reasonable basis for not treating such
> individual as an employee.

\*    \*    \*    \*    \*    \*    \*

(3) Consistency required in the case of prior tax treatment.--Paragraph (1) shall not apply with respect to the treatment of any individual for employment tax purposes for any period ending after December 31, 1978, if the taxpayer (or a predecessor) has treated any individual holding a substantially similar position as an employee for purposes of the employment taxes for any period beginning after December 31, 1977.

Petitioner does not satisfy the requirements of section 530 and is therefore not eligible for relief under that section for at least the following two reasons.

First, section 530(a)(1)(A) conditions the applicability of relief to the situation where "the taxpayer did not treat an individual as an employee for any period". Section 530(a)(3) clarifies this requirement by providing that for periods after December 31, 1977, if "the taxpayer (or a predecessor) has treated any individual holding a substantially similar position as an employee", then section 530 relief is not available to the taxpayer. Thus, if the taxpayer treats any service provider as an employee for any period after December 31, 1977, then the taxpayer is precluded from obtaining section 530 relief with respect to a similarly situated service provider in any subsequent taxable period. See Lowen Corp. v. United States, 785 F. Supp. 913, 916 (D. Kan. 1992), affd. sub nom. Eastern Inv. Corp. v. United States, 49 F.3d 651 (10th Cir. 1995). A fortiori, if the taxpayer treats a particular service provider as an employee for any period after December 31, 1977, then the

taxpayer is precluded from obtaining section 530 relief with respect to that particular service provider in any subsequent taxable period.

In order to satisfy the substantive consistency requirement of section 530, petitioner would have to establish that it did not treat Mr. Barron, or any service provider whose position was substantially similar to Mr. Barron's, as an employee for any period after December 31, 1977. In the present case, Mr. Barron is the only C.P.A. who provided services for petitioner and the only individual who provided professional services for petitioner. Accordingly, in order to satisfy the substantive consistency requirement of section 530, petitioner would have to establish that it never treated Mr. Barron as an employee. However, Mr. Barron was treated as an employee in 1994 when: (1) Petitioner issued Mr. Barron a Form W-2 for the taxable year 1994; (2) petitioner included Mr. Barron's compensation on its Form 941 for the fourth quarter of 1994 and computed its liability for FICA tax accordingly; and (3) petitioner included Mr. Barron's compensation on its Form 940 for 1994 and computed its liability for FUTA tax accordingly.

Because petitioner does not satisfy the substantive consistency requirement, petitioner is not eligible for relief under section 530.

Second, eligibility for relief under section 530(a)(1) requires that the taxpayer have a reasonable basis for not treating the service provider in question as an employee. This requirement may be established by the particular facts and circumstances of the case or by reference to one of the three "safe harbors" described in section 530(a)(2).

We recognize that the Congress intended that "this reasonable basis requirement be construed liberally in favor of taxpayers." H. Rept. 95-1748, 1978-3 C.B. (Vol. 1) 629, 633. However, it has been held that an S corporation's treatment of its president as a shareholder, rather than as an employee, was unreasonable within the meaning of section 530 where the president "was, for all practical purposes, the central worker for the taxpayer." Spicer Accounting, Inc. v. United States, 918 F.2d 90, 95 (9th Cir. 1990). There the Court of Appeals concluded that "it is clear that Mr. Spicer failed to satisfy this [reasonable basis] standard, however liberally construed." Id. Similarly, because Mr. Barron was "the central worker" for petitioner and provided substantial services, and further because sections 3121(d)(1) and 3306(i) unambiguously state that a corporate officer is an employee, we conclude that petitioner's treatment of Mr. Barron was unreasonable.

Petitioner relies on Durando v. United States, 70 F.3d 548 (9th Cir. 1995), in support of its treatment of Mr. Barron. That

case is clearly distinguishable, however, as demonstrated by the fact that it neither cites <u>Spicer Accounting, Inc. v. United States</u>, <u>supra</u>, nor involves section 530.  Indeed, <u>Durando v. United States</u>, <u>supra</u>, does not present any issue involving the classification of a service provider and does not even involve employment taxes.  Rather, the case holds that passthrough income from an S corporation may not be treated as net earnings from self-employment for the purpose of a Keogh plan deduction.[8]

In view of the foregoing, we hold that petitioner is not eligible for relief under section 530.

### Conclusion

We have carefully considered remaining arguments made by petitioner for a result contrary to that expressed herein and, to the extent not discussed above, we consider those arguments to be without merit.[9]

---

[8] Although a shareholder of an S corporation may not establish a Keogh plan, the Court of Appeals stated that the S corporation may establish a retirement plan for its employees; the Court of Appeals also quoted from one of the Commissioner's publications to the effect that an officer of an S corporation who performs substantial services is an employee of the S corporation.  See <u>Durando v. United States</u>, 70 F.3d 548, 551 n.6 (9th Cir. 1995).

[9] Among those arguments is petitioner's allegation that respondent's brief was filed 1 day late and that "Respondent should also be held to the rules."  Contrary to petitioner's allegation, respondent's brief was timely filed pursuant to sec. 7502(a).

Reviewed and adopted as the report of the Small Tax Case Division.

In order to give effect to the foregoing,

<u>An appropriate order will be issued</u>.[10]

---

[10] After this case was tried and the parties' briefs were filed, Congress amended sec. 7436(a) retroactively to confer jurisdiction on this Court to determine "the proper amount of employment tax". Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, sec. 314(f), (g), 114 Stat. 2763. Having sustained respondent's notice of determination regarding the issues in dispute at trial and on brief, we leave it to the parties in their Rule 155 computation to specify the proper amount of employment taxes to be reflected in the Decision to be entered in this case.